## THE STATE v. LONIE AFFRONTI, Appellant.

Division Two, February 18, 1922.

1. **INFORMATION: Robbery: Sufficiency.** The information in this case, charging defendant with robbery, by violence, meets the requirements of Section 3307, Revised Statutes 1919, and is sufficient in both form and substance.

2. **INSTRUCTION: Robbery: Criminal Intent.** The instruction on robbery in the first degree, by violence and putting in fear, set out in the opinion, is based on Section 3307, Revised Statutes 1919, and is approved, although it does not in express words require the jury to find that the assault was made with "criminal intent."

3. ———: ———: **Aiding and Abetting.** The instruction in this case, set out in full in the opinion, telling the jury that if defendant "was present aiding, abetting and encouraging in any way or by any means the commission of such acts" of assault upon and robbery of the two women, they should find him guilty of robbery in the first degree, is *held* to be a clear and forceful statement of the law, based on substantial evidence and within the purview of the information.

4 ———: ———: ———: **Mere Presence.** The instruction, set out in the opinion, telling the jury the difference between participation in a robbery and mere presence as an innocent spectator, is couched in plain and intelligent language, and is approved.

5. ———: ———: **Bailee of Stolen Property: Supported by Evidence.** An instruction telling the jury that "one who has the lawful possession and control of the personal property of another, as bailee, that is, one who is keeping the personal property of another, in his or her possession, with the consent and permission of the owner, may be regarded for the purposes of this trial as the owner of said property," announces a correct principle of law applicable to a trial for robbery; and evidence showing that the gun which the robbers took by violence from two sisters had been given them for their protection is a substantial basis for such instruction.

6. ———: ———: **Testimony of Accomplice: Defining Corroborated.**
An instruction telling the jury that the testimony of an accomplice is admissible, that it should be received with great caution unless corroborated by some person not implicated, and that the jury are at liberty to convict defendant on the uncorroborated testimony of an accomplice if they believe it to be true, is itself a sufficient definition of "corroborated."

7. **CROSS-EXAMINATION: Character Witnesses.** Inquiry of defendant's character witnesses on cross-examination if they had ever heard of his being arrested, or of his being at police headquarters or of his being at the reform school, where all answered in the negative, and testified to no fact injurious to him, is not error.

8. **APPELLATE PRACTICE: Weight of Evidence: Alibi: Robbery.** Alibi is usually the main defense in prosecutions for robbery, and the reported cases make manifest that the alibi is taken into account when preparations are being made to commit the crime; and the facts generally presented to establish alibi call peculiarly for solution by a jury, and it is their province to weigh such facts, and when the evidence of defendant's guilt is substantial, the appellate court will not interfere with their verdict on the ground that the testimony of defendant's numerous witnesses disproves his presence at the scene of the robbery.

Appeal from Clay Circuit Court.—*Hon. Ralph Hughes*, Judge.

AFFIRMED.

*Ernest G. Simrall, Joseph F. Aylward* and *Horace Guffin* for appellant.

(1) The information shows upon its face that it is invalid and insufficient to support the conviction herein, and does not charge any offense under the law against the defendant. (a) The information does not state what the defendant is alleged to have stolen, taken or carried away, whether money or other property, the value thereof, nor from whom it is alleged to have been taken, or by what means, and does not inform the defendant as to who was the owner of the property so alleged to have been taken. State v. Krueger, 47 Mo. 531; State v. Barnes,

281 Mo. 519; State v. Wade, 267 Mo. 259; State v. Timeus, 232 Mo. 177; State v. Keating, 202 Mo. 204; Wharton's Criminal Plead. & Prac. (9 Ed.) sec. 220; 1 Bish. Crim. Proc. secs. 81, 86, 88, 519.   (b)   The information failed to aver the name of the real owner of the property in controversy, and did not allege that the same was taken from the person or in the presence of the real owner, and the information was not supported by the evidence, as the evidence in the case showed that the firearms mentioned in the information were owned by Sheetz Howdeshell, a relative of the persons alleged to have been robbed, and to whom he had loaned the property.   State v. Lawler, 130 Mo. 371; Roscoe's Crim. Ev. (7 Ed.) 908, 911; 3 Greenl. Ev. (14 Ed.) secs. 224, 228; 2 Bish. Crim. Proc. secs. 726, 1006; Comm. v. Morse, 14 Mass. 218; State v. Moore, 101 Mo. 316; State v. Morledge, 164 Mo. 526.   (2)   The court erred in giving, over the objections and exceptions of the defendant, Instruction 5, because the same was broader than the scope of the averments contained in the information, and because the instruction did not contain all of the essential and necessary statutory elements of the alleged offense with which the defendants was charged, nor did the instruction require the jury to find that the other alleged participants therein committed an unlawful assault or that defendant had any criminal intent to commit any alleged offense or that he had any intent to aid and abet in the commission of the same, nor did it contain or submit the facts necesary to constitute any offense under the law for the consideration of the jury, before the jury could return a verdict of guilty as required by said instruction.   (a)   An instruction which undertakes to cover the whole case and contains a direction to find a verdict must contain all of the essential and necessary elements of the alleged offense, and the omission therefrom of an essential element is prejudicial and reversible error, and cannot be cured by the giving of any other instruction in the case. State v. Graves, 185 Mo. 718; State ex rel. v. Ellison, 272 Mo. 583; Hall v. Coal & Coke Co., 260 Mo. 367;

Wojtylak v. Coal Co., 188 Mo. 282. (b) The instruction was further erroneous in that it omitted an essential element of the offense of robbery, to-wit, criminal intention on the part of the defendant to commit the alleged offense or criminal intent on his part while aiding and abetting in the alleged commission thereof, and the jury was thereby authorized and warranted to find the defendant guilty even though he had no such intent or was innocently present at the commission of the alleged offense and not being one of the real participators therein. State v. Graves, 185 Mo. 718; State v. Brown, 104 Mo. 371; State v. O'Connor, 105 Mo. 126; State v. McLain, 159 Mo. 362; State v. Broderick, 59 Mo. 310; State v. Johnson, 111 Mo. 583; State v. Smith, 174 Mo. 588; State v. Woodward, 131 Mo. 369; State v. Ware, 62 Mo. 601; State v. Carter, 259 Mo. 359; State v. Bowers, 239 Mo. 436. (c) In-, struction 5 was further erroneous in that it required the jury to find that the taking of the property in question was from the person of one who was not the real and true owner thereof, but merely a borrower of the property, and the jury were not required in said instruction to find that the property alleged to have been taken was in the presence or against the will of the true owner, which facts under the law the jury should have been required to find before returning a verdict of guilty, because said facts were a necessary and constituent element of the alleged crime of robbery. State v. Lawler, 130 Mo. 371; State v. Morledge, 164 Mo. 526; State v. Moore, 101 Mo. 316; 2 Bish. Crim. Proc. sec. 722; Com. v. Moore, 14 Mass. 217. (d) Instruction 5 was further erroneous in that it submitted facts which were not averred in the information, to-wit, the participation of other persons in the alleged offense, there being no allegation of any connection between defendant and said persons, and it authorized a verdict against the defendant without proof of a conspiracy or concerted action between himself and the others alleged to have participated in the alleged crime. State v. Johnson, 111 Mo. 584. (3) The court erred in giving Instruction 4, because the same did not

require the jury to find that the assault alleged to have been made upon Amanda Howdeshell and Martha Howdeshell was with criminal intent or felonious, and the same was not supported by the evidence, because the testimony showed that the property alleged to have been taken was not owned by Amanda Howdeshell or Martha Howdeshell and was not taken from or in the presence of the real owner against his will or by force and violence to his person or in his presence. Authorities supra. (4) The court erred in giving Instruction 5½, in that it assumed the defendant was a participator in the commission of a felony and the same was broader than the averments contained in the information, because there were no allegations contained in the information as to other persons participating in said alleged offense, and the jury were not required to find thereby, if he did participate therein, that the defendant had any felonious intent or that there was any concerted action or connection between himself and the other alleged participants. Authorities supra. (5) The court erred in giving Instruction 6, for the reason that there was no evidence in this case that the Misses Howdeshell had possession of the firearms in question as bailee, and the instruction invaded the province of the jury in assuming that they were such and in directing the jury that for the purposes of this trial they had a special interest therein and should be regarded as the owners of said property, although said fact was a question for the jury to decide. State v. Lawler, 130 Mo. 380; State v. Morledge, 164 Mo. 526. (6) The court erred in giving Instruction 8, in that it did not define the word "corroborated" used therein, and that such "corroboration" should go so far as to identify the person of the defendant against whom the alleged accomplice testified. State v. McLain, 159 Mo. 353; State v. Miller, 100 Mo. 606; State v. Chyo Chiagk, 92 Mo. 395. (7) The court erred in permitting the prosecuting attorney and special counsel to assume in the cross examination of defendant's character witnesses that he had been guilty of other alleged extraneous and

specific offenses, when said questions did not in any manner contradict the statements as to what his reputation was, and the persistent and unfair conduct of the prosecuting attorney and special counsel in asking said improper questions poisoned the minds of the jury against the defendant, and was highly prejudicial to the defendant. State v. Seay, 282 Mo. 678-9; State v. Parker, 172 Mo. 207; State v. Teeter, 239 Mo. 485; State v. Wellman, 253 Mo. 315; State v. Phillips, 233 Mo. 305.

*Jesse W. Barrett,* Attorney-General, *Albert Miller,* Assistant Attorney-General, for respondent.

(1) The information is suffcient. It contains all necessary averments required to properly charge the crime of robbery in the first degree, and fully informs the defendant as to the charge he must meet. Sec. 3307, R. S. 1919; State v. Lamb, 141 Mo. 298; State v. Calvert, 209 Mo. 280; State v. Flynn, 258 Mo. 211; State v. Williams, 183 S. W. 308. (a) Sec. 3307, R. S. 1919, defines but a single offense of robbery, but sets out two methods of perpetrating the one crime defined. The information charges in the conjunctive that the offense was committed in both ways; they not being inconsistent with or repugnant to each other, the pleading is not duplicitous. State v. Parker, 262 Mo. 169; State v. Flynn, 258 Mo. 219; State v. Williams, 183 S. W. 308. (b) It is not necessary in a robbery case that the information charge who was the actual owner of the money taken. State v. Williams, 183 S. W. 308, 310; State v. Carroll, 214 Mo. 392; State v. Montgomery, 181 Mo. 19. (3) The court did not commit error in giving Instruction 5. (a) The words ''without any honest claim to such property or money on his part, and with the intent at the time to wrongfully and fraudulently deprive the said Amanda Howdeshell and Martha Howdeshell, or either of them, of their ownership therein, without consent of said Amanda Howdeshell and Martha Howdeshell'' indicate the wrongful and fraudulent intent, and are sufficient to

show that the taking was without the owner's consent. State v. English, 228 S. W. 746; State v. Rader, 262 Mo. 134; State v. Burgess, 268 Mo. 415; State v. Massey, 274 Mo. 589; State v. Reagan, 217 S. W. 84.   (b) It is not necessary in a robbery case that the information charge or the evidence show who was the actual owner of the money taken.   Proof that the person named in the information was in actual possession of the money is sufficient to sustain the charge.   State v. Williams, 183 S. W. 308; State v. Carroll, 214 Mo. 392; State v. Montgomery, 184 Mo. 19.   (c)   The party may be charged with doing an act himself and be held liable under such charge for being present, aiding and assisting another in doing it.   Sec. 3687, R. S. 1919; State v. Orrick, 106 Mo. 111; State v. Valle, 164 Mo. 551; State v. Sykes, 191 Mo. 78; State v. Carroll, 232 S. W. 699.   (4) The court did not commit error in the giving of instruction 4.   The words "without any honest claim to such property or money on his part, and with the intent at the time to wrongfully and fraudulently deprive the said Amanda Howdeshell and Martha Howdeshell, or either of them, of their ownership therein, and without consent of said Amanda Howdeshell and Martha Howdeshell, or either of them" indicate the wrongful and fraudulent intent, and are sufficient to show that the taking was without the owner's consent.   State v. English, 228 S. W. 746; State v. Rader, 262 Mo. 134; State v. Burgess, 268 Mo. 407; State v. Massey, 274 Mo. 578; State v. Reagan, 217 S. W. 84.   (5) The court did not commit error in the giving of Instruction 5½.   Said instruction properly declares the law, and was warranted by the evidence in this case.   State v. Cantlin, 118 Mo. 100; State v. Dockery, 243 Mo. 592.   (6)   The court did not commit reversible error in the giving of Instruction 6.   Against a wrong-doer possession is title.   State v. Montgomery, 181 Mo. 19.   (7) The court did not commit error in the latitude allowed in the cross-examination of appellant's character witnesses.   (a)   When defendant put these witnesses forward to support his character he subjected them to legitimate cross-

examination upon the subject of inquiry, and himself to such disaster as might result therefrom. State v. Crow, 107 Mo. 341; State v. McLaughlin, 149 Mo. 19; State v. Parker, 172 Mo. 191; State v. Harris, 209 Mo. 423; State v. Phillips, 233 Mo. 299; State v. Steele, 280 Mo. 63. (b) A witness who has testified to the good character of the accused may be asked on cross-examination if he has not heard of a specified charge against the accused. Ingraham v. State, 67 Ala. 67; Derman v. State, 71 Ala. 351; State v. Brown, 181 Mo. 192; State v. Crow, 107 Mo. 341; State v. McLaughlin, 149 Mo. 19. (c) It was largely a matter of discretion with the trial court as to how far such cross-examination should be allowed. State v. Harris, 209 Mo. 423; State v. Phillips, 233 Mo. 299.

RAILEY, C.—On June 4, 1920, the Prosecuting Attorney of Clay County, Missouri, filed herein a verified information charging defendant with robbery in the first degree. It is alleged that he assaulted, in said county, on December 4, 1920 (1919), Amanda Howdeshell and Martha Howdeshell and robbed them of a rifle, revolver and $40 in money, etc. Defendant waived a formal arraignment and entered a plea of not guilty. On June 16, 1920, the jury, before whom the case was tried, returned the following verdict:

"We, the jury, find the defendant guilty and assess his punishment at 10 years in State Pentitentiary.

"WILLIAM THORP, Foreman."

The testimony on behalf of the State tends to show substantially the following facts: That Amanda J. and Martha Howdeshell lived in Fishing River Township, Clay County, Missouri; that on the afternoon of December 4, 1919, while Amanda was in the east room of the lower floor of their dwelling, sewing on a dress skirt, she saw three men walk into the yard and up to her house; that the door was slightly open at the time, and they walked into the house; that they filed in one after the other; that the last man who entered was appellant in this case, and he had a pistol or revolver in his hand;

that Amanda Howdeshell was standing in front of him, and he was pointing the pistol toward her; that Amanda reached for a gun she had laid on the floor, and as she picked up the same, some, or all of these men grabbed her, took the gun away from her, dragged or carried her into another room, and put her in a closet; that before dragging her into this room, they shoved her back on the bed, threw the dress skirt she was working on, around her head, and struck her on the side of the head several licks with something; that her face was bruised on both sides, by those licks; that her face was bruised across her nose and her lip was cut; that she heard Martha make some kind of a noise, but did not see her until the men left, and then found her in the west room; that while one man was holding the closet door, with Amanda in the closet, he asked her where her money was, and she said it was in the Liberty bank; that she was screaming while in the closet, and one of said men told her to hush up or he would kill her with the razor; that while in the closet she heard some one pass up and down the stairway and into the kitchen, making a great deal of racket; that it was a two story house, and she heard some one walking upstairs; that there were some beds, boxes, a washstand, a trunk and a few other things upstairs; that Martha Howdeshell had some money in the house, which she kept in tobacco boxes or cans, and silver money was kept in those boxes also; that after these men left, Amanda walked over to Judge Wood's, and the latter telephoned for Amanda's brother; that after washing the blood from her face while at Judge Wood's, Amanda went home, looked around, found the bed on the floor, the carpet partly torn up, boxes emptied, trunks emptied and scattered about; that a gun and pistol were missing, being the same gun taken from Amanda's hands; that the pistol formerly belonged to her brother Will, who had been dead about five years; that it had been in her care and custody since her brother's death; that the gun taken from Amanda aforesaid had been brought to their house by their brother Sheets, a short time before, for

the protection of Amanda and her sister Martha; that all of the foregoing occurred in Clay County, Missouri; that on March 21, 1921, appellant was taken to the home of Amanda and Martha, and was there identified by Amanda; that she also identified him at the preliminary hearing, as being at her house on December 4, 1919; that Martha Howdeshell is hard of hearing and has difficulty in making people understand her when she talks; that she cannot pronounce words so that people can understand her; that she had been so afflicted since infancy; that Martha told Amanda these men took her in the other room and laid her on the floor; that after the men left, she came to the closet and told Amanda that they were gone; that Sheets Howdeshell, in December, 1919, gave his sisters Amanda and Martha the rifle heretofore mentioned in evidence; that it was a 32-calibre Remington, of the value of six or eight dollars; that Sheets found an automobile track in front of his sisters' house about four o'clock on the afternoon of the robbery; that Sheets had given said rifle to his sisters before the robbery; that he did not loan the rifle, but gave it to them; that after the robbery on December 4, 1919, Amanda Howdeshell missed some money; that she and her sister had in the house a few pieces of money kept as relics, a few pieces of silver money, an old-time three-cent piece, one copper two-cent piece, and some five and ten cent pieces; that this money was in a trunk upstairs in the attic, and was gone after these men left, and was never found again.

The testimony of Charles Williams, an accomplice, in behalf of the State, is substantially as follows: That he was in prison at Jefferson City, Missouri, serving a five-year term, having been sentenced from the Circuit Court of Clay County at Liberty, Missouri, upon a plea of guilty to robbery in the first degree; that he knew where Amanda and Martha Howdeshell lived in Clay County, Missouri; that he was down there on the 4th of December, 1919; that with him at the time, were appellant (Affronti), Frank Caruso and Frank Harrell; that on Monday morning before the 4th of December, witness

was in Kansas City, and went from there to Excelsior
Springs; that when he went back he passed this place
where Amanda Howdeshell lives, and came back to Liber-
ty; that Frank Harrell and a man named Fristenburg
were with him; that witness was intoxicated; that he went
to Kansas City that night with Frank Harrell, and drove
to 13th and Walnut Streets and spoke to Fristenburg, and
then went to 1201 East 5th Street and met a man who got
appellant, Affronti; from there they drove to Excelsior
Springs; and finally drove to the home of the Howdeshell
women; that they first drove by the house and then
turned around and went back and stopped right by the
house; that there were two houses there; that they
stopped close by the log house; the other was a white
frame house; they then got out of the car and went
through the house, and witness states he does not know
what happened then; that witness remained in the car
and Harrell, appellant Affronti, and Caruso walked in
the house; that they came back out, and appellant Af-
fronti had in his hands, as he came out of the house, a
rifle; that he put this rifle in the car, after carrying it
from the house to the car; that they then left the Howde-
shell house and drove back to Liberty; that on the way
back to Liberty, he saw some silver money in appellant's
hand; that appellant took it out of his pocket and held it
out; that when they got to Liberty they stopped at the
interurban station and Affronti and Caruso got on the
car; that later witness went to Kansas City with Jack
Kennedy and identified appellant's picture in the rogue's
gallery, and then saw appellant in the show-up room at
police headquarters; that on the 4th day of December,
1919, witness saw Affronti, Caruso and Harrell with
pistols; all three of them had pistols; that he saw these
pistols coming back from Howdeshells'; that he also
saw Harrell have a two-cent piece, two dimes, a nickel and
a penny; that he saw this coming back from Howde-
shells' and between the Howdeshells' and Liberty; that
Harrell took this money out in his hand and said, "That
was some haul;" that witness went to the Howdeshells'

on two different occasions—on Monday and on the 4th of December following; that the first time he went there he was intoxicated; that the second time he went there he remained out in the automobile; that the robbery at the Howdeshell farm occurred at about 3:30 p. m. on the 4th day of December, 1919; that the value of the pistol owned by the Howdeshell women was five dollars.

Frank Harrell, an accomplice, testified in behalf of defendant, substantially as follows: That he knew Charles Williams who testified for the State, something over a year; that he, witness, was in the robbery at the Howdeshell home; that he pleaded guilty in the Clay County Circuit Court; that witness went i the Howdeshell home that day with Williams and the large fellow; that Caruso entered the home first, and witness waited in the car for the reason that the Howdeshell women knew him and witness did not want to go in until after they had been blindfolded, that is, after they put the skirts over their heads; that he thought they were hurting the women and said, "Don't hurt these ladies, boys," and that they put them in a little closet and searched the house for money; that witness did not find any money there; that he thought there was some fifty or seventy-five thousand dollars; that he would not have gone out there for just a little petty larceny offense; that since they didn't find any money they got up and left; that he, witness, saw Williams have a revolver there; that said Williams was in the Howdeshell home on December 4th; that with the exception of Caruso, witness did not know the names of the other fellows; that appellant was not one of the men who was there; that the other fellow was much larger than appellant; that the other fellow who assisted in the robbery was dead, having been killed during a hold-up according to an article witness read in a Kansas City paper; witness admitted that previously and after the arrest of appellant in this case, as he saw the officers taking appellant by, he said to them, "You have got all four of us now;" that witness carried a gun, a 38-calibre revolver out of the Howdeshell house on the day of the

robbery; that he got this revolver in the house, that witness planned the robbery; that he had been down there before; that he married a relative of the Howdeshell family; that witness furnished the car to go to the Howdeshell home; that the car belonged to his wife's grandmother; that he went over to Kansas City and got the Italian, Caruso, to go to the Howdeshell home with him; that witness is now serving a term of eight years in the penitentiary at Jefferson City.

Dr. D. M. Nigro testified that he was a physician, practicing in Kansas City; that he knew appellant about ten years; that he saw appellant on the 2nd day of December, 1919, at appellant's home, 517 Gillis, in Kansas City, Missouri; that on that occasion appellant was sick; that he diagnosed his case as influenza; that he left a prescription there that day, went there again the next day to visit appellant; that he visited him also on the 4th and 5th days of December, 1919, at appellant's home; that on the 4th of December, he examined appellant; that he developed a cough and he gave appellant a cough sedative; that on the 2nd, 3rd, 4th and 5th of December, 1919, appellant was a rather sick boy; he had a high fever and complained of pains in the back and headache; that on the 2nd day of December, appellant developed other symptoms of influenza; that on the 3rd he got a little better; that on the 4th he developed a cough and that day witness was afraid appellant was going into pneumonia; that witness did not make any record of the hours during which he visited appellant and that he could not recall any of the hours that he was to see him; that every time witness visited appellant he was in bed; that he never visited appellant after the 5th of December.

Peter F. Bono testified that he was a druggist, and during the 2nd, 3rd, 4th and 5th of December, 1919, was employed by the Cass Drug Store at 1002 Grand Avenue; that at that time he had charge of the prescription department that he knew the Affronti family in Kansas City; that he knew the appellant; witness identified

292 Mo.—5

"Exhibit C" as the prescription filled for appellant, issued by Dr. D. M. Nigro, serial No. 36,850, date 12-2-19; witness also identified defendant's "Exhibit D" as a prescription for appellant, dated 12-4-19, registered No. 368, 551.

Sundina Caesar testified she is a sister of appellant and lived at 517 Gillis, in December, 1919; that appellant was sick at his home and attended by Dr. Nigro; that on the 2nd of December, she received a prescription from the doctor, went down to the drug store and got the medicine from Peter Bono; that she did the same on the 4th of December; that at the time appellant was sick in bed; that she was with appellant every minute of the day and that he was not out of the house on the 4th day of December.

Lonie Affronti, appellant, testified as follows: That he was born in Kansas City; that he is twenty-two years old; that he was arrested by some city officers and taken to the city jail and from the city jail was taken by a marshal out in the country; that he was a clerk in his father's grocery store and lived at 517 Gillis; that he was taken to the Howdeshell home by the marshal; that he was taken into the Howdeshell home, and Amanda Howdeshell said, "That's the man;" that he had never been in that home before; that during the early days in December, 1919, he was sick in bed; that Dr. Nigro was his physician; that he was sick in bed the 1st, 2nd, 3rd, 4th and 5th days of December, at his home; that he did not leave his home on the 4th day of December at any time; that he did not commit the crime here charged against him; that he does not know the witness Charles Williams, who testified in this case; that he did not see him until yesterday when he testified; that he did not see witness Harrell until he took the stand; that he never knew an Italian in Kansas City named Frank Caruso; that he had been at Boonville in the reform school eighteen months.

Charles Payne, Joe Kalluci, W. P. Neville, Joseph E. Gorman, Edward McCarty, Sam W. Dana and An-

thony Dovono, character witnesses, testified that defendant's reputation for honesty and integrity was good.

Some other testimony was introduced tending to impeach the evidence of Charles Williams, witness for the State.

The instructions given and refused, as well as the rulings of the court during the progress of the trial, will be considered, as far as necessary, in the opinion.

Defendant, in due time, filed motions for a new trial and in arrest of judgment. Both motions were overruled, and defendant appealed to this court, from the sentence and judgment against him.

I. Under proposition one of appellant's "Points and Authorities," he challenges the sufficiency of the information herein, which, without caption and signature, reads as follows:

"Claude Coppinger, Prosecuting Attorney within and for the County of Clay in the State of Missouri, informs the court that Lonie Affronti on the 4th day of December, A. D. 1920 (1919), at the County of Clay, in the State of Missouri, did then and there unlawfully and feloniously make an assault upon Amanda Howdeshell and Martha Howdeshell, and one thirty-two calibre rifle, and one thirty-eight calibre revolving pistol, both of the value of ten dollars, and forty dollars in lawful money of the United States of the value of forty dollars, all of the aggregate value of fifty dollars, all being the personal property of the said Amanda Howdeshell and Martha Howdeshell, from the person and in the presence and against the will of the said Martha Howdeshell and Amanda Howdeshell, by force and violence to the persons of said Amanda Howdeshell and Martha Howdeshell, and by putting the said Amanda Howdeshell and Martha Howdeshell in fear of some immediate injury to their persons, feloniously did rob, steal and take and carry away, contrary to the form of the statute in such cases made and provided, against the peace and dignity of the State."

*Information.*

The language of the information covers the requirements of Section 3307, Revised Statutes 1919. It is sufficient, as to both form and substance. Its validity is sustained by an unbroken line of decisions in this court, some of which are as follows: State v. Lamb, 141 Mo. l. c. 301-2; State v. Calvert, 209 Mo. l. c. 285-6; State v. Lamb, 242 Mo. 398; State v. Flynn, 258 Mo. l. c. 214-15; State v. Williams, 183 S. W. (Mo.) l. c. 309-10; State v. Eddy, 199 S. W. (Mo.) l. c. 187-8; State v. Massey, 274 Mo. l. c. 584-5, 204 S. W. l. c. 542; State v. Bater, 232 S. W. (Mo.) 1012; State v. De Priest, 232 S. W. (Mo.) l. c. 84; State v. Brown, 234 S. W. (Mo.) 785; State v. Cantrell, 234 S. W. (Mo.) l. c. 801; State v. Lasson, 292 Mo. 155; State v. Huffman, 238 S. W. 430.

The foregoing authorities are conclusive as to the sufficiency of the information herein.

II.   Defendant insists that Instruction Four, given by the court, is erroneous, because it did not require the jury to find that the alleged assault made on Amanda Howdeshell and her sister Martha was with criminal intent, or "feloniously," etc.   It reads as follows:

"If the jury believe and find from the evidence that defendant at the County of Clay and State of Missouri, on December 4, 1919, made an assault upon Amanda Howdeshell and Martha Howdeshell, or either of them, and took one 32-calibre rifle, and one 38-calibre revolving pistol; and forty dollars in United States lawful money, or any part of said property or any part of said money, the property of Amanda Howdeshell and Martha Howdeshell, from the persons or in the presence of the said Amanda Howdeshell and Martha Howdeshell, or from the persons or in the presence of either of them, and against the will of the said Amanda Howdeshell and Martha Howdeshell, or against the will of either of them, by force and violence to the persons of the said Martha Howdeshell and Amanda Howdeshell, or by force and violence to the persons or either of them, or by putting the said Martha Howdeshell and Amanda

*Instructions.*

Howdeshell in fear of some immediate injury to their person, or by putting either of them in fear of some immediate injury to her person, without any honest claim to such property or money on his part, and with the intent at the time to wrongfully and fraudulently deprive the said Amanda Howdeshell and Martha Howdeshell, or either of them, of their ownership therein, and without consent of said Amanda Howdeshell and Martha Howdeshell, or either of them, and if such property or any part so taken, if any, was of any value whatever, then they should find the defendant guilty of robbery of the first degree and assess his punishment at imprisonment in the penitentiary for a term of not less than five years.''

The above instruction is based upon Section 3307, Revised Statutes 1919, defining robbery in the first degree, and is sustained by substantial evidence heretofore set out. It properly declares the law, in respect to the matters referred to therein, and is well supported by the following authorities: State v. English, 228 S. W. (Mo.) l. c. 750-1; State v. Reagan, 217 S. W. (Mo.) l. c. 84; State v. Massey, 274 Mo. l. c. 589, 204 S. W. l. c. 544; State v. Burgess, 268 Mo. 407, 188 S. W. l. c. 138; State v. Baker, 264 Mo. l. c. 354, 175 S. W. l. c. 68.

III. Instruction Five, given by the court, is attacked upon several grounds by counsel for appellant. It reads as follows:

''If upon a consideration of all of the facts in the case in the light of the instructions given you by the court, you find and believe that on or about the 4th day of December, 1919, at the County of Clay and State of Missouri, one Frank Harrell, Charles Williams and one Caruso, or either of them, did make an assault upon Amanda Howdeshell and Martha Howdeshell, or either of them, and took one 32-calibre rifle and one 38-calibre revolving pistol, and forty dollars in United States lawful money, or any part of said property or any part of said money, the property of

**Aiding and Abetting.**

Amanda Howdeshell and Martha Howdeshell, from the persons or in the presence of the said Amanda Howdeshell and Martha Howdeshell, or from the persons or in the presence of either of them and against the will of the said Amanda Howdeshell and Martha Howdeshell, or against the will of either of them, by force and violence to the persons of the said Martha Howdeshell and Amanda Howdeshell, or by force and violence to the persons of either of them, or by putting the said Martha Howdeshell and Amanda Howdeshell in fear of some immediate injury to their person, or by putting either of them in fear of some immediate injury to her person, without any honest claim to such property or money on his part, and with the intent at the time to wrongfully and fraudulently deprive the said Amanda Howdeshell and Martha Howdeshell, or either of them, of their ownership therein, and without consent of said Amanda Howdeshell and Martha Howdeshell, and if such property or any part so taken, if any, was of any value whatever, and if (having found the above facts) you further find and believe that defendant was then and there present aiding, abetting and encouraging in any way or by any means the commission of such acts (if any) you should find the defendant guilty of robbery in the first degree as he stands charged, otherwise you should acquit the defendant."

In our opinion, it is a clear and forceful statement of the law, based on substantial testimony, is within the purview of the information, and is in full accord with the principles of law as declared in the authorities cited in the two preceding propositions. It is not obnoxious to the criticisms leveled against it.

IV.  Appellant complains of Instruction 5½ given by the court, which reads as follows:

"The court instructs the jury that every person who is present at the commission of a felony, aiding, abetting, assisting or encouraging the same, by words, gestures,

**Presence at Robbery.** looks or signs, is in law deemed an aider and abettor, and is liable as a principal, but on the other hand, mere presence at the commission of a felony or other wrongful act does not of itself render a person liable as a participator therein; if he is only a spectator, innocent of any unlawful intent touching said felony, and does not aid, abet, assist or encourage those who are actors therein, he is not liable as a principal or otherwise.''

This instruction is couched in plain and intelligent language. It properly declares the law in connection with Instruction Five, supra, and enabled the jury to properly determine what relation, if any, the defendant bore to the robbery in question. [State v. Cantlin, 118 Mo. l. c. 107, 111; State v. Dockery, 243 Mo. l. c. 597.]

V. Appellant also complains of Instruction 6, given by the court, on the alleged ground that it is not supported by the evidence. Said instruction reads as follows:

''In connection with this case, the court instructs the jury that one who has the lawful possession and control of the personal property of another, as bailee, that is, one **Bailee.** who is keeping the personal property of another, in his or her possession, with the consent and permission of the owner, may be regarded for the purposes of this trial as the owner of said property.''

We are clearly of the opinion, that there is substantial testimony in the case, as heretofore shown, on which the court properly based said instruction. It announces a correct principle of law, and meets with our approval. [State v. Montgomery, 181 Mo. l. c. 23, 29; State v. Carroll & Gleason, 214 Mo. l. c. 401-2, 113 S. W. 1051; State v. Williams, 183 S. W. (Mo.) l. c. 310; State v. Huffman, 238 S. W. 430.

VI. Instruction 8, given by the court, is likewise assailed by defendant, on the alleged ground that the word ''corroborated'' was not defined as used therein. The instruction reads as follows:

"The testimony of an accomplice in the crime, that is, a person who actually commits or participates in the crime, is admissible.  Yet evidence of an accomplice in crime, when not corroborated by some person or persons not implicated in the crime, as to matters connecting the defendant with the commission of the crime charged against him, ought to be received with great caution by the jury, and the jury ought to be fully satisfied of its truth before they should convict the defendant on such testimony.  You are at liberty, however, to convict the defendant on the uncorroborated testimony of any accomplice alone, if you believe the statements as given by such accomplice to be true, if you further believe that the state of facts, if any, sworn to by such witness, establishes the guilt of the defendant beyond a reasonable doubt."

*Defining Corroborated.*

The criticism made in respect to this instruction is a reflection upon the common sense of the jurors trying the case.  It was a precautionary instruction given for the benefit of defendant, and properly declared the law. [State v. Cummins, 279 Mo. l. c. 208-9, 213 S. W. 969; State v. Bobbitt, 215 Mo. l. c. 41-2; State v. Sassaman, 214 Mo. l. c. 729-30; State v. Daley, 210 Mo. l. c. 680; State v. Kosky, 191 Mo. l. c. 9; State v. Crab, 121 Mo. l. c. 565.]

VII.  It is contended by appellant that prejudicial error was committed in the cross-examination of his character witnesses by the State.

Six or eight witnesses testified in behalf of defendant, that his reputation for honesty and integrity was good.  Some of these witnesses were asked if they had ever heard of defendant being arrested.  Some were asked if they had ever heard of his being at the show-up room at police headquarters, and some were asked if they had ever heard of his being in the reform school at Boonville.  These witnesses all answered in the negative.  They did not testify to any facts which were injurious to defendant but, on the contrary, the testimony of all these witnesses

was favorable to defendant. After carefully reading the record, we find no errors which would warrant us in reversing the case on account of the cross-examination of appellant's character witnesses. [State v. Crow, 107 Mo. l. c. 345, 347; State v. McLaughlin, 149 Mo. l. c. 32-3; State v. Parker, 172 Mo. l. c. 206-7; State v. Harris, 209 Mo. l. c. 441 and fol.; State v. Phillips, 233 Mo. l. c. 305-6; State v. Steele, 280 Mo. l. c. 69-70; State v. Huffman, 238 S. W. 430.]

VIII. We have read with great care the transcript, as well as the briefs of counsel, in this case. We are of the opinion that the State produced substantial testimony tending to show that appellant was guilty of the crime charged against him in the information. It is not the province of this court to pass upon the weight of the evidence. The daily newspapers are teeming with alleged hold-ups similar to the one at bar, and numerous cases are constantly coming to this court on appeals from convictions of a similar character. An alibi is usually the main defense in most of these cases, and facts are generally presented which peculiarly call for solution at the hands of the jury. It is strenuously insisted that the testimony of defendant's witnesses, on the question of alibi, disproves his presence at the scene of the robbery. This issue was presented to the jury, and decided adversely to his contention. It is manifest from reading the reported cases that the alibi is taken into account when preparations are made to perpetrate the crime. With rapid transit now furnished in the use of automobiles, a defendant by honest testimony, may be shown to have been at a certain place at a given time, and yet may have hurriedly driven to another point, committed a crime, and returned to the place where these witnesses located him. The testimony relating to alibi, like the other facts in the case, must be considered by the jury in passing upon the weight of the evidence.

    *Alibi.*

In conclusion we find from the record that defendant has received a fair and impartial trial before an un-

prejudiced jury, and that he has been convicted, without error, upon substantial testimony. The judgment below is accordingly affirmed. *White* and *Reeves, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.