THE STATE v. WILLIAM H. SOCWELL, Appellant.—300 S. W. 680.

Division Two, December 12, 1927.

*Gossett, Ellis, Dietrich & Tyler* for appellant.

744

*North T. Gentry,* Attorney-General, and *A. M. Meyer,* Special Assistant Attorney-General, for respondent.

DAVIS, C.—In the Circuit Court of Jackson County there was filed an information charging defendant with forgery in the second degree, that is, with having in his possession on December 24, 1924, a certain check with intent to defraud and with selling and delivering same with intent to have it uttered and passed. Tried and convicted, the jury fixed the punishment at two years' imprisonment in the penitentiary, defendant appealing.

The salient facts developed by the State warrant the finding that on December 24, 1924, Christmas Eve day, between eight and nine o'clock P. M., a man entered the drug store of Bohling & Dumler, 2601 Independence Avenue, Kansas City, while Bohling's wife, Dumler and customers were present in the store, and, accosting Bohling, purchased a bill of goods amounting to seven dollars or more, and tendered a check in payment thereof, drawn on the Franklin National Bank, Philadelphia, purporting to have been issued by the Pennsylvania Railroad System, signed by Henry H. Lee, treasurer, and which check Bohling accepted, delivering the goods and handing the man the excess change. Charles C. Somers was payee of the check, and the man represented himself to be Somers. The check at the time was indorsed and to convince Bohling that he was Somers, he scribbled the name on a pad. The man was in the store about twenty minutes, part of the time being consumed by Bohling's indecision relative to accepting the check. The man told Bohling he lived on Randolph Road in North Kansas City, writing that address underneath the indorsement. Bohling deposited the check in the bank, but it was found fraudulent and returned to him upon the payment of twenty dollars in cash. Bohling positively identified defendant as the man presenting the check. In company with Pinkerton detectives Bohling went to Toledo, Ohio, about January 31, 1925, and, at their suggestion, stationed himself across the street from a certain house, where he observed defendant come from the house, following him to the post office and there identifying him as the man uttering and selling the Somers check. The Pinkerton Detective Agency paid his expenses to Toledo.

I. B. Bekker testified that about two P. M. on Christmas Day, 1925, a man entered his drug store in Kansas City, thereupon purchasing a bill of goods. He tendered in payment a Pennsylvania Railroad check for twenty-five dollars, payable to George C. Edwards, then indorsing it. This check was also signed by Henry H. Lee, treasurer of Pennsylvania Railroad System. The check was banked, but was returned "fraudulent" and charged back to the store. Witness identified defendant as the man who tendered the check in payment of the bill and received the excess change.

Witness Merz testified that he was clerk at the Hotel Victoria in Kansas City, and that on December 24, 1924, defendant there registered as Henry F. Stonington, signing the register. The man offered a check of the Pennsylvania Railroad System, signed by Henry H. Lee, treasurer, for twenty dollars, payable to Henry F. Stonington, which witness refused to cash, but it was later cashed by the manager of the hotel. The register and the check were offered in evidence. He identified defendant as the man who signed the register and who offered the check to him.

Henry H. Lee testified that he was treasurer of the Pennsylvania Railroad Company and that it was not his signature or handwriting on either of the three checks offered in evidence; that the Pennsylvania Railroad Company is a corporation of Pennsylvania and was such in December, 1924; that the checks are not on forms used by the Pennsylvania Railroad Company, and that its checks are not marked Pennsylvania Railroad System. He further testified that the Pennsylvania Railroad does business with the Franklin National Bank of Philadelphia and there was such a banking institution as the one mentioned in Philadelphia.

Witness Stevenson testified that he arrested defendant in Toledo and that he waived extradition.

Charles T. Smith of Kansas City, a handwriting expert, stated that the indorsement on the three checks and the signature on the hotel register in his opinion were written by one and the same person.

The salient facts for the defense develop that prior to December 23, 1924, defendant had for about four days resided at the Brown Hotel in Cincinnati, Ohio, with his wife. The wife was employed as a solicitor of funds for a charitable organization in Ohio, the defendant driving her from town to town in her work. About noon on December 23, 1924, they started to drive in defendant's car to Indianapolis, where defendant's mother resides, to spend Christmas with her. The wife, before leaving, sent a telegram over the Western Union to the mother as follows: ''Expect to arrive about ten P. M.,'' which was signed ''Bill'' by the wife. The records of the Western Union show this telegram. On the way they were required to stop the night of December 23, 1924, at Dunreith, Indiana, on account of sleet and bad weather. They spent the night at the Sherman Hotel in Dunreith, which is about forty miles from Indianapolis. Sherman, the proprietor of the hotel, stated that a man by the name of William H. Socwell and his wife spent the night at his hotel. Unable to reach Indianapolis that night, he attempted to telephone his mother in Indianapolis, but was unable to get connection with her phone. Later on that night, between ten and eleven o'clock he was able to connect with the phone of Gus Grahn, an acquaintance in Indianapolis, but as Grahn was at his drug store Everett M. Carter, on the night of December 23, 1924, answered the phone at Indianapolis, conveying the message to Grahn who relayed it to Mrs. Socwell, the mother. These occurrences are corroborated by the proprietor of the Sherman Hotel, by an official of the local telephone company through whom the telephone call was made, and by Carter, who answered the telephone. Defendant's mother, two sisters, brother-in-law, Grahn and Carter testified that they saw him in Indianapolis on December 24th, and for three weeks following, with the exception of Grahn and Carter, who stated that they saw him only on Decem-

ber 24, 1924, in Indianapolis, between twelve noon and one o'clock
P. M.

Witness Vining for defendant, vice-president of the Commerce Trust Company of Kansas City, stated that he was a paying teller for twelve years and that in his opinion the indorsement on the three checks, spuriously passed, and the name of Stonington on the hotel register, were written by one and the same person. He further testified that letters and envelopes, which were shown to be in the handwriting of defendant, were not in the same handwriting that appeared on the spurious checks and the hotel register.

Witness Stevenson for the State, being recalled for cross-examination, stated that defendant signed three copies of a waiver of extradition, and that one of the copies was brought to Kansas City and was in the records in the department there. Such other facts as are pertinent will later appear.

I. It is charged that the record does not substantially show guilt, due to its failure to point to the guilt of defendant so clearly as to exclude every reasonable hypothesis of innocence. This contention is based on the evidence offered by defendant tending to establish an alibi. While the evidence for defendant, if believed, clearly exonerated him, the evidence for the State tended to show that defendant was the man who sold and transferred the spurious check to Bohling. The identification of him by Bohling was positive, as was that of Merz, the hotel clerk. Bekker, co-owner of the other drug store, while surmising that he might be mistaken, held to the belief that defendant was the man. Their identification is linked up by handwriting experts both for the State and defendant to the effect that the same man wrote the indorsements on the three checks and signed the hotel register. Here then were three witnesses who substantially identified defendant as the man who passed the spurious checks and signed the hotel register. This evidence was sufficient to take the case to the jury, notwithstanding defendant's evidence as to an alibi, for it is without our province to encroach upon the functions of the jury as trier of fact. [State v. Affronti, 292 Mo. 53, 238 S. W. 106.]

II. Plaintiff complains of the instructions. As the motion for a new trial was filed on June 13, 1925, prior to the taking effect of the 1925 statute, as interpreted by State v. Standifer, 289 S. W. 856, the old rule prevails which permits us to consider a question of error called to our attention generally by the motion. Instruction 2 for the State reads:

"The court further instructs the jury that if you find and believe from the evidence that at any time within three years next before

the 7th day of March, 1924, the date of the filing of the information herein, at Jackson County, State of Missouri, the defendant W. H. Sockwell, had in his custody and in his possession a certain false, forged and counterfeited check, described in the information herein, and introduced as evidence in this case, unlawfully, and feloniously, with intent to injure and defraud, did sell and deliver the said falsely made, forged and counterfeited check to one Theodore Bohling for the sum of twenty dollars, with intent to have the same uttered and passed, he, the said W. H. Sockwell, then and there well knowing the said check to be falsely made, forged and counterfeited, then you will find the defendant guilty of forgery in the second degree, as charged in the second count of the information, and assess his punishment at imprisonment in the state penitentiary for a term of not less than two nor more than ten years. Feloniously, as used in these instructions, means wickedly and against the admonition of the law, that is, unlawfully.''

In order to understand the instruction a review of the apposite statutes is necessary. The information was drawn in two counts, the first charging forgery of a check under Section 3428, Revised Statutes 1919, and the second charging possession of a forged check with intent to defraud and sell same, under Section 3430, Revised Statutes 1919. As the jury failed to return a finding on the first count, the defendant stands as though acquitted thereon, resulting that our discussion is necessarily limited to the second count. However, we find that Section 3428 defines as forgery in the second degree the forging of a check, first, being or purporting to be made or issued by any bank or trust company incorporated under the laws of this State, or any other state, territory, government or country; or, second, any order or check being or purporting to be drawn on any such incorporated bank or trust company. Section 3430 defines as forgery in the second degree the bringing into this State or the possessing of any such falsely forged check, etc. It is evident from a reading of Section 3428 that the offense denounced by the statute is the drawing or purporting to draw a false check on a specific bank or trust company incorporated. An element of the offense under this section is the drawing of a check on an incorporated bank or trust company, which must be alleged and proved on the trial by competent testimony and so found by the jury under proper instructions.

An interpretation of Section 3430, read in conjunction with Sections 3428 and 3429 which immediately precede it, leads to the conclusion that the word ''such'' specifically refers to the possession of a false check drawn on an incorporated bank or trust company. It is apparent that the drawer of the information so construed the sections, for it is competently alleged that the check was drawn on the

Franklin National Bank of Philadelphia, a banking corporation duly organized and existing according to law.

Bearing in mind that an essential element of the offense is the possession of a false check drawn on an incorporated bank or trust company, a reading of Instruction 7 advises us that it fails to require the jury to find that the check was drawn on the Franklin National Bank or that such bank was then in existence or incorporated according as Section 3428 provides. The only evidence of the existence or incorporation of the Franklin National Bank at the time of the alleged offense is found in the testimony of the treasurer of the Pennsylvania Railroad Company to the effect that there is such a banking institution as the one mentioned in that check in Philadelphia; and, the Pennsylvania Railroad does business with the Franklin National Bank of Philadelphia. Whether this bit of evidence is sufficient to show incorporation it is unnecessary to decide, but as the facts in that regard were meagre and of doubtful value, the jury should have been clearly instructed relative thereto. As the fact of the bank's incorporation was an essential element of the State's case, which was charged with the burden of both alleging and proving it, it was necessary for the instructions to cover the point, and as Instruction 2 purported to cover the whole case, the omission from it of the essential element of incorporation was fatal error.

The information charged and the evidence showed that the offense was committed December 24, 1924. While it was probably an inadvertent error, yet Instruction 2 permitted the jury to find defendant guilty if the offense was committed within three years from March 7, 1924. The jury were thus permitted to find the offense occurred at a time when the bar of the Statute of Limitations was effective. This was misleading and confusing to the jury and we think under the facts and circumstances in this case, the inadvertence constituted prejudicial error.

III. Instruction 4 reads: "The court instructs the jury that if there is any evidence before you that raises in your minds a reasonable doubt as to the presence of the defendant at the time and place where the crime is charged to have been committed (if you find a crime was committed), you will acquit the defendant."

The information unequivocally charges that the offense occurred on December 24, 1924. The evidence as strongly and as unequivocally developed that the offense was committed on the afternoon of December 24, 1924. There is no intimation from any witness that it occurred on any other day. Even the check relied upon as a forgery was dated December 16, 1924. With this situation obtaining, defendant charges that Instruction 2, per-

mitting the jury to find from the evidence that if the offense occurred at any time within three years next before the seventh day of March, 1924, and Instruction 4, permitting the jury to acquit defendant, if they had reasonable doubt as to the presence of defendant at the time and place where the crime is charged to have been committed, are hopelessly in conflict and therefore erroneous. We agree to defendant's contention, for the instructions cannot be reconciled. While the State may show that a crime was committed within the period of the Statute of Limitations prior to the filing of the information, yet where the evidence unequivocally shows that an offense was committed on a certain date and the defendant presents an alibi as to that certain date, instructions, one of which authorizes a conviction within the limitation period and the other directs an acquittal if the defendant was not present on the date the State's evidence shows the crime was committed, confound and confuse the jury. Such an instruction as the one given for the State fails to hold the jury to the point in issue. While this court has probably never ruled upon the question presented, the point has been ably reasoned by ELLISON, J., in State v. Fellers, 140 Mo. App. 723, 127 S. W. 95. The St. Louis Court of Appeals followed this reasoning in State v. Campbell, 260 S. W. 542. Inasmuch as the instructions conflicted, prejudicial error obtained.

We refrain from discussing other alleged errors as they are capable of being revised upon a retrial. For the errors occurring, we reverse the judgment and remand the cause. *Higbee* and *Henwood*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.