**STATE of Missouri, Respondent,**

v.

**Augustus ARMSTEAD, Appellant.**

No. 44699.

Supreme Court of Missouri, Division No. 1.

Nov. 14, 1955.

578

Cecil Block, Donald J. Sher, St. Louis, for appellant.

John M. Dalton, Atty. Gen., W. Don Kennedy, Asst. Atty. Gen., for respondent.

VAN OSDOL, Commissioner.

Defendant was convicted of knowingly receiving money, without any consideration therefor, from the earnings of a woman engaged in prostitution. Section 563.040 RSMo 1949, V.A.M.S. His punishment was assessed at six years in the penitentiary. He has appealed from the judgment entered.

Herein defendant-appellant contends the evidence was insufficient to sustain a conviction and the trial court erred in overruling defendant's motion for a judgment of acquittal.

Evidence was introduced tending to show that Jo Ann Huckleberry, a married woman but separated from her husband, had been living with one O'Neil. At about eight-thirty o'clock in the evening of December 22, 1953, Jo Ann, accompanied by O'Neil, went to the Reed Hotel in St. Louis. Jo Ann registered, and for the first time met defendant who was a bellboy in the hotel. He operated the elevator in taking her to a room which had been assigned to her on the third floor. While on the elevator defendant told Jo Ann that he had talked to O'Neil about her moving to the hotel, and that he (defendant), "whenever he had these men for me," would come to her room and conduct her "to the rooms." Defendant told Jo Ann that she was supposed to ask the men for ten dollars or fifteen or twenty, and not to ask below ten. Around midnight (of December 23d–24th), defendant came to Jo Ann's room and conducted her via the elevator to a room on the fourth floor where she had sexual intercourse with a man who gave her ten dollars. She then went to the elevator and gave the money to defendant; and "he took four of it and gave me six back" and took her back to her room.

The trial court, acting on the theory that the evidence tended to show a common plan, admitted evidence tending to show that twice on the same evening of December 23d, once at about eight o'clock and again between nine forty-five and ten-fifteen, defendant in like manner had shown Jo Ann to rooms occupied by other men, in which rooms Jo Ann had sexual intercourse with men and received ten dollars for each sexual act. This money she gave defendant who, in each instance, "took four and gave me six back."

 This evidence was substantial and sufficient in supporting a jury's finding of defendant's guilt of the crime charged, although this evidence consisted of the testimony of Jo Ann, a prostitute, who, the evidence shows had been formerly convicted of a felony. There were no mutually destructive inconsistencies in Jo Ann's testimony which destroyed the substantiality of it. The facts that the State's witness, Jo Ann, was a prostitute and had been convicted of a felony did not affect her competency as a witness; nor did they, in themselves, as a matter of law, destroy the substantiality of her testimony. These facts were for the consideration of the jury in passing on her credibility as a witness. It has often been correctly said that a jury has the peculiar province of judging the credibility of a witness and the weight and value of his testimony. An appellate court does not interfere with a jury's verdict supported by substantial evidence. In our opinion the trial court did not err in overruling defendant's motion for a judgment of acquittal. State v. Thursby, Mo.Sup., 245 S.W.2d 859, and cases therein cited.

Defendant contends the trial court erred in giving the State's main Instruction No. I by which the issue of defendant's guilt of the crime charged was submitted to the jury as follows,

" * * * The Court instructs you that if you find and believe from the evidence in this case, beyond a reasonable doubt, that on or about the 23rd. day of December, 1953, one Jo Ann Huckleberry was engaged in the practice of prostitution * * *, and if you further find and believe from the evidence, beyond a reasonable doubt that the defendant at said time knew that the said Jo Ann Huckleberry was so engaged in

said practice, if you find she was, and if you further find and believe from the evidence that *on or about* the 23rd. day of December, Jo Ann Huckleberry had received, as earnings from her practice of prostitution certain monies, lawful money of the United States, and if you further find and believe from the evidence, beyond a reasonable doubt that the defendant * * *, *on or about* the 23rd. day of December, 1953, feloniously and knowingly did accept or receive a sum of money, to-wit: $4.00, in lawful money of the United States, or any part of said money from the said Jo Ann Huckleberry, without any consideration therefor, * * *." (Our italics.)

Defendant introduced evidence tending to show that he was not present in the hotel after seven o'clock in the evening of December 23d. And the trial court gave Instruction No. II on the defense of alibi as follows,

"The defendant has interposed as a defense what is known in the law as an alibi; that is, that even if the offense was committed as charged he was at the time of the commission thereof at another and different place than that at which such offense was committed, and, therefore, was not and could not have been the person who committed the same. If the evidence leaves in your minds a reasonable doubt as to his presence at the place where the offense was committed at the time of the commission thereof, you will find him not guilty."

It is defendant's position that Instruction No. I, submitting the issue of his guilt of crime committed "on or about" December 23d, nullified his alibi defense. On the other hand, the State asserts there is no evidentiary foundation for an alibi instruction. It is argued that one could accept as true every word of defendant's evidence tending to support an alibi, and yet be justified in finding defendant was present at the time and place at the hotel (eight o'clock to about midnight) December 23d, when and where, according to the charge by indictment and the State's evidence, the crime was committed.

It was charged in the indictment, and the State's evidence supporting the charge tended to show, that the offense was perpetrated on December 23, 1953. The State seems to have committed itself to the theory the offense was perpetrated about midnight on that very date, "or perhaps in the early morning hours of the 24th." During defendant's cross-examination of Jo Ann, the witness mentioned that she had given money to defendant on December 30th, whereupon the Assistant Circuit Attorney stated (without the presence of the jury), "May the record show that the only question on direct examination that was asked, other than the acts on December 23d, was whether she engaged in prostitution while at the hotel. * * * The reason I want this in the record is that while the Court has ruled it is proper to show the acts on the same night, that it is part of the plan, I did not mention any other specific acts of intercourse as to the 30th or any other date, nor did I bring out that he received any money from her earnings on any other night." Yet, in his argument to the jury, the Assistant Circuit Attorney urged, "* * * She (Jo Ann) testified that she went into that hotel on December 22d— and I might point out on this before I forget it, the Court has instructed you that if you find that on or about December 23d— maybe the girl is mistaken about the date, I don't know, maybe she wasn't."

█ Considering the crime as charged herein, in itself, its nature is not such as to make time the essence of the offense. State v. Lakin, Mo.Sup., 177 S.W.2d 500. But it seems that issues may be raised or joined which make time of decisive importance. In State v. Chittim, Mo.Sup., 261 S.W.2d 79, it was held that, where the issue was presented by the State that a crime was perpetrated at a particular time, August 7, 1951, and the issue was accepted by the defense, there was no foundation upon which to place an instruction as to any other time. In that case the instruction (containing the language "on the 7th day of August, 1951, or at any other time within three years next before the filing of the information herein,

to-wit, October 6") nullified defendant's alibi defense which was supported by substantial evidence. See also State v. Socwell, 318 Mo. 742, 300 S.W. 680; State v. Campbell, 324 Mo. 249, 22 S.W.2d 645; State v. Taylor, 345 Mo. 325, 133 S.W.2d 336.

In the Taylor case the facts were peculiar in that defendant could not have been legally convicted on an alleged occurrence on January 14th. Defendant could have been convicted, if at all, on an alleged occurrence on January 17th. The State's main instruction submitted the issue of defendant's guilt "on or about the 17th day of January, 1938, or at any time within three years next before the filing of the information in this cause." The instruction was prejudicially erroneous because it authorized a conviction for crime committed on January 17th or at any time within three years prior to the filing of the information, which would include January 14th. In that case, it was suggested by the State that instructions similar to the State's instruction had been approved by this court in cases where time was not of the essence of the offense; but this court said that, for the reasons stated, the time element was important.

In State v. Childers, Mo.Sup., 268 S.W.2d 858, cited by the State, the information averred the offense occurred on November 16th, and the jury was justified in finding it occurred sometime during the month of November. The State's principal instruction predicated guilt upon a jury finding that defendant committed the offense "on or about the 16th day of November, 1950, or any day within three years before March 3, 1953, the date of the filing of the information." In that case defendant did not offer evidence tending to establish an alibi; he denied he committed the offense; he testified that he had never upon any occasion molested prosecutrix either on November 16th or on any other date. In State v. Lakin, supra, the information charged the commission of an offense "on or about" May 16th, whereas the evidence was substantial in tending to show the offense charged was committed on May 17th. This was not a failure of proof. Time was not of the essence of the offense. The admission of evidence tending to establish that the offense was perpetrated on May 17th and the State's main instruction submitting the issue of defendant's guilt "on or about May 16th" were not erroneous. Obviously, in the Childers and Lakin cases there were no issues raised which would make time an important element. In our case defendant sought to interpose an alibi defense.

Alibi means that defendant claims he was at another and different place than that at which the alleged crime was committed at the time it was committed. State v. Grant, Mo.Sup., 98 S.W.2d 761. The theory of alibi is that the fact of defendant's presence elsewhere is essentially inconsistent with his presence at the place where the alleged offense was committed and, therefore, defendant could not have personally participated. Although the defense is not an affirmative one, the fact of defendant's presence elsewhere is an affirmative fact logically operating to negative his presence at the time and place. Vol. 1, Wigmore on Evidence, 3d Ed., § 136, p. 570. Considering the theory of alibi as thus stated in its strict technical sense, the evidence introduced by defendant in this case did not support an alibi defense. No positive evidence was introduced tending to show that defendant was elsewhere than at the Reed Hotel between the hours of eight and twelve in the evening of December 23d, and in the early morning of December 24th. Defendant's evidence did not tend to show affirmatively that he was elsewhere, and, consequently, could not have been present. But defendant's evidence did tend to negative his presence at the time and place. We regard this difference in kinds of proof of little or no significance in this case. Whatever kind of evidence, positive and affirmative or negative, defendant introduced tending to show that he was not present at the time and place the alleged crime was committed tended to negative his personal participation in it.

Defendant's evidence tending to show he was not present between the hours of eight and twelve, December 23d, consisted of the testimony of a single witness, Irving J.

Corn. The witness testified that he, the owner and manager of the Reed Hotel, employed defendant and one Ezel Cole as bellboys, and that defendant was not on duty Sunday, December 20th. Defendant worked from seven in the morning to seven in the evening of December 21st and did not work on December 22d. The witness further testified that on (Wednesday) December 23, 1953, and "the rest of that week" defendant worked from approximately seven o'clock in the morning to seven in the evening, and was then relieved by the bellboy Ezel Cole. The witness said that after seven o'clock in the evening of December 23d defendant would not have been operating the elevator until they changed "shifts" at seven in the morning of December 24th; he (the witness) never has two bellboys "on at a time"; bellboys never change shifts; "they are not around the hotel when they are not on duty"; and employees are not "permitted at the hotel after they are off duty."

■ We shall assume this testimony, when considered together with all of the evidence, was sufficient to raise a reasonable doubt of defendant's presence. Having so assumed and having studied the effect of this testimony in negativing defendant's presence, we think it is of consequence to note it tended to negative defendant's presence not only during the hours between seven in the evening of December 23d and seven in the morning of December 24th, but also tended to negative his presence during those hours of other days throughout the week beginning December 20th. Consequently, we believe it is not soundly contended that the phrase "on or about the 23rd. day of December" was erroneous and prejudicial in "nullifying" defendant's defensive evidence. This, because such defensive evidence tended to negative defendant's presence during the stated hours of days "on or about" December 23d.

■ It is true that, during cross-examination, prosecutrix alluded to another occurrence of December 30th, but the State did not develop evidence tending to show the crime as charged might have been committed on December 30th. The State, in developing its case, strictly adherred to its theory that the offense was committed at or about midnight December 23d. In this situation we believe the jury must have understood that the issue being tried was that of defendant's guilt of an offense committed about midnight December 23d. Furthermore, we believe the jury must have understood the phrase "on or about the 23rd. day of December" contained in Instruction No. I accommodated a possibility that the offense as charged was committed in the early morning of December 24th. We cannot believe that jurors of average intelligence would understand the phrase was inclusive of a week's variance in time; nor do we think the jury was led to so believe by the Assistant Circuit Attorney's reference in his argument to the language "on or about" contained in the instruction and his allusion to the possibility of a mistake as to the date. We have said in Crawford v. Arends, 351 Mo. 1100, 176 S.W.2d 1, that the words "on or about" do not put the time at large, but indicate that it is stated with approximate certainty. We further said the phrase is used in reciting the date of an occurrence to escape the necessity of being bound by an exact date and means "approximately," "about," "without substantial variance from," "near." See 67 C.J.S., On; Upon, p. 496; Vol. 29, Words and Phrases, On or about, p. 455.

■ Defendant-appellant also complains of the argument of State's counsel in which argument State's counsel urged, "I know this that more people have an interest in this case than Gus Armstead. Gus Armstead is a man who theoretically is making sixty dollars a month, and there is bondsman and expensive lawyer hired. * * * Mr. Hunziker (a reporter) was paid $35.00 for making the record down there in the police court. Where did that money come from? * * * Who else has an interest in this case? Corn says we strongly warn the boys against hustling. You are twelve adult gentlemen, and you know how it is operated. You know it is a cancer in society." To which defendant's counsel objected on the grounds of "going outside of the

record in this case," and that Hunziker "testified I paid him and there is no evidence I have been reimbursed or even receiving a fee in this case." These objections were sustained by the trial court, and the jury was admonished that argument of counsel is not to be taken as evidence. Defendant requested no further action. Assuming that portions of the quoted argument were improper, yet, absent a request by defendant, we believe defendant should not be heard to assert error in the failure of the trial court to act further.

 In his closing argument, counsel for the State urged as follows, "No, she (Jo Ann) didn't lie when she said it. If there is one of you gentlemen has any doubt about it, walk the defendant out of the courtroom. Mr. Block (defendant's counsel) attacks me and says the police officers put her up to it. Nobody is any good except him and Gus Armstead. The evidence has shown that Gus Armstead is nothing but a pimp." Defendant's counsel requested that these remarks be stricken from the record and a mistrial declared for the reason "it is injecting poisonous, inflammatory matter, outside of the record * * *." It is contended the trial court erred in denying these requests. In his brief herein defendant-appellant asserts the argument was not in accord with the State's duty to try a defendant fairly and impartially. He says a prosecutor should never be permitted to apply unbecoming names and epithets to a defendant or to refer to a defendant as a criminal of any class or kind. See State v. Taylor, 320 Mo. 417, 8 S.W.2d 29. Defendant particularly complains of the use of the word "pimp," and urges that certainly a prosecutor in argument to the jury has no right to use such a vile epithet in characterizing an accused. The term, says defendant, was used solely for the purpose of inflaming the jury against defendant. But as we see it, State's counsel was seeking to uphold the credibility of the State's witness, Jo Ann; and he was urging that her testimony was worthy of belief and demonstrated defendant's guilt of the crime charged. State's counsel, in driving home his argument, summarized by saying, "The evidence has shown that Gus Armstead is nothing but a pimp." The word "pimp" so used was not an epithet hurled at defendant without any relation to or support by evidence. Of course it was not improper for State's counsel to urge inferences or conclusions supported by evidence. The testimony of Jo Ann was substantial evidence of defendant's guilt as charged, and the argument was that the evidence had shown defendant was a pimp. The argument was but another way of urging that the evidence showed defendant was guilty of the crime charged. The word "pimp," as we understand it, is, in common usage, but another appellation or name for one who is guilty of the crime as was herein charged by indictment. We consider the word a commonly used synonym for the words "panderer" and "procurer." See State v. Thursby, supra; Black's Law Dictionary, 4th Ed., p. 1306; Webster's New International Dictionary, 2d Ed., p. 1864. We rule this contention adversely to defendant.

The information was sufficient, and the verdict responsive. Allocution was afforded, and the judgment and sentence duly pronounced.

The judgment should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.