241 S.W.2d 4 (1951)
STATE
v.
DUPEPE.
No. 42359.
Supreme Court of Missouri, Division No. 1.
July 9, 1951.
*5 William J. Gilwee, Kansas City, for appellant.
J. E. Taylor, Atty. Gen., E. L. Redman, Asst. Atty. Gen., for respondent.
COIL, Commissioner.
Clement A. Dupepe was convicted of robbery in the first degree and sentenced to five years in the penitentiary.
On his appeal, four assignments of error are briefed. Three of these are argued under one point, that the evidence was insufficient to sustain the verdict. The fourth is, that the court improperly overruled an objection by defendant's counsel to a statement by the assistant prosecuting attorney which referred to defendant's failure to testify.
On December 27, 1948 Charles Coffey and Eddie Warren were on duty as employees in a filling station located in Independence, Jackson County, Missouri. On the premises was a small (about 5' x 7'), well-lighted office. Outside was a series of six lights spaced at intervals around and under the eaves. The walls of the building were glass from a place four feet off the ground to the roof. There was a row of floodlights trained upon the filling station driveway.
At 11:30 P. M. on the date mentioned, Coffey and Warren had counted certain money with which they had been "charged" as employees, preparatory to the arrival of another employee for a change of shifts. This money, or a portion of it, had been placed on a desk in the building. Two men appeared and passed the window immediately in front of the desk at which Coffey and Warren were standing. One man walked in a "slouched" or stooped position, entered the station, and took a "slouched" position against the desk. The other man remained at the door and shortly "pulled a *6 gun and said, `Give him the money.'" The man at the desk cupped his hands and Coffey and Warren, or one of them, placed $87.72, at least part of which was the money from the desk, into the cupped hands. The two men then immediately left the station, the one carrying the money continuing to walk in a stooped manner.
Coffey and Warren immediately reported the incident to the Independence police. Police officers arrived within approximately ten minutes. Included in the written report made by the police officers were descriptions of the two men involved in the robbery furnished jointly by Coffey and Warren. The description of the participant (Smith) other than defendant was: White, American; light hair; color of eyes, unknown; height, 6 feet; age, 32 years; weight, 160 pounds; wearing a tan camel's-hair overcoat and grey hat. The description of the other participant was: White, American; light hair; color of eyes, unknown; height, 5 feet 6 inches; age, 35 years; weight, 150 pounds; wearing a black overcoat and black snap-brimmed hat. Police Officer Hayden testified that the foregoing were the descriptions given to him by Coffey and Warren; that Coffey and Warren were excited; that they told him that one of the men was "crouched down."
A short time after the robbery, probably a week or two, Coffey and Warren saw a picture of two men in the Kansas City Star, one of whom they recognized as the man who held the gun on the night of December 27. This was made known to the authorities who then had in custody the men pictured in the newspaper. Both Coffey and Warren identified one of the men pictured as the man who held the gun upon viewing him either at a "show-up" in police headquarters or at a preliminary hearing. Neither Coffey nor Warren identified the second man in the newspaper picture as a participant; but Coffey signed a warrant charging both the man they had identified and the other man (not identified) as participants in the robbery. Coffey explained that he did so because the man he did identify (Smith) implicated the man with whom he was pictured in the newspaper (one Rogers), as being the other participant in the robbery.
Later, defendant was taken into custody by the Kansas City police and both Coffey and Warren identified him as the man who was "slouched" at the desk. Positive identifications of defendant were made by Coffey and Warren on three occasions; once by Coffey at defendant's preliminary hearing, once by Warren at a police "show-up", and both identified defendant at the two trials of this case.
It was developed by counsel for defendant at the last trial that the description of the man who held the gun (Smith), given the Independence police by Coffey and Warren, fitted Smith almost perfectly; that the description of the other participant given the Independence police, compared with the actual appearance of defendant at the trial, contained certain discrepancies, viz.: defendant had dark rather than light hair, and was 6 feet 1 inch in height rather than 5 feet 6 inches.
It is the contention of the appellant, as we understand it, that the description which Coffey and Warren furnished, immediately after the robbery, of the man, purportedly the defendant, was in such conflict with the actual appearance of defendant as to make the testimony of Coffey and Warren insubstantial in that it was self-destructive. Appellant in his brief says: "so self-destructive as to be of no value and not sufficient for a jury to base a verdict finding the appellant guilty beyond a reasonable doubt." This contention is untenable. The evidence was clearly sufficient to sustain the verdict of conviction. The discrepancies in the descriptions given by Coffey and Warren shortly after the holdup and the actual appearance of the defendant, considered in connection with the contrast between the discrepancies in the description of defendant and the accuracy of the description as to the other alleged participant, were clearly matters for the consideration of the jury in determining the credibility of the witnesses and the weight of the evidence. This is true also of the testimony of Coffey that he signed a complaint involving *7 one other than the defendant as the second man involved in the robbery, and true of the testimony that Coffey and Warren were excited at the time of the incident. None of these matters destroyed or made insubstantial the positive identifications of the accused by Coffey and Warren.
The one case cited by appellant in support of his point, State v. Gregory, 339 Mo. 133, 96 S.W.2d 47 does not sustain the contention. In that case, the evidence was attacked as not being substantial and the testimony of the prosecuting witnesses pertaining to the identification of the accused was discredited in a far more substantial degree than was the testimony of the prosecuting witnesses in this case. In the Gregory case, we held the identification sufficient. It is true, as stated in State v. Gregory, supra, that this court may pass upon the credibility of testimony in so far as to determine whether or not such testimony constitutes substantial evidence, i. e., evidence sufficient to permit reasonable minds to believe the defendant guilty beyond a reasonable doubt; and it is true, as also stated in State v. Gregory, supra, that "Where the state's evidence is inherently incredible, self-destructive, or opposed to known physical facts," an appellate court is probably in as good a position as a trial court to make such a determination, but that "where it is claimed the testimony is completely impeached by contradictory evidence, we are at a great disadvantage, since we lack the means to knowledge that come through confrontation. About all that can be said is that in such instances we reserve the power to grant relief when the denial of it would shock the sense of justice." 96 S.W.2d 53. Here, the positive identifications by both Coffey and Warren of defendant as one of the participants in this robbery, together with their explanations as to why they believed the defendant to be shorter than the other participant at the time they furnished descriptions, and having in mind the proximity of the witnesses to defendant at the time of the robbery and the welllighted condition of the premises, constituted substantial evidence of the guilt of defendant. State v. Preston, Mo.Sup., 184 S.W.2d 1015, 1016 [1-3]. Such evidence was not inherently incredible; the testimony of Coffey and Warren was not selfdestructive; not opposed to known physical facts; not completely impeached by contradictory evidence; and a denial of relief does not shock the sense of justice. In determining the sufficiency of evidence, this court accepts as true all substantial evidence offered by the state together with all inferences that may reasonably be drawn therefrom. State v. Peters, Mo. Sup., 123 S.W.2d 34, 36 [1-3]; State v. Miller, Mo.Sup., 202 S.W.2d 887, 889 [1, 2].
Furthermore, Police Officer Wells of the Kansas City Police Department testified that on January 21, 1949 he overheard defendant being questioned by Lieutenant Haupt of the Kansas City Police, at which time, in answer to questions, defendant admitted that he had participated in the robbery: "He admitted the robbery and said that SmithI forget his first namehad the revolver or the pistol and he got the money." This admission or confession by defendant was sufficient alone to make the guilt of the defendant a jury question, where, as here, the corpus delicti, i. e., evidence that the specific crime charged was committed by someone, was proved by evidence other than the admission or confession. State v. Hawkins, Mo.Sup., 165 S.W.2d 644, 646 [6-11].
Defendant did not testify. During the closing argument of the assistant prosecuting attorney, the record shows the following:
"He (referring to defendant's attorney) has absolutely nothing to talk about in this case. He has no evidence. The defendant has not even testified.
"Mr. Gilwee: I am going to object to the prosecution by inference. I object to the prosecuting attorney, by reference, referring to the fact that defendant failed to testify, and I move that the jury be instructed to disregard it.
"The Court: Overruled.
*8 "Mr. Gilwee: Exception." (Parenthetical insertion ours).
Appellant set forth the point in his motion for new trial by stating that the "Court erred in failing to sustain an objection by the defendant to the action of the Assistant Prosecuting Attorney in commenting on the failure of the defendant to testify in his own behalf, and the failure of the Court to sustain a motion by the defendant to discharge the jury" and by assigning as reasons or grounds therefor that: "the action of the Assistant Prosecuting Attorney in referring to the failure of the defendant to testify was inflammatory and would tend to prejudice the jury against the defendant."
Section 546.270 Mo.R.S.1949, which forbids reference to the fact that defendant failed to testify is mandatory in that respect, although timely and proper objection and exception is required. State v. Conway, 348 Mo. 580, 586, 154 S.W.2d 128, 132. Here the statement made clearly violated the express prohibition of the statute by a direct statement that the defendant did not testify.
The state contends that the objection made was insufficient in that it is too general; that the alleged error was not sufficiently preserved in the motion for new trial; and that it was necessary for counsel for appellant to have requested further action by the court after the objection had been overruled. We think there is no merit in these contentions under the circumstances of this case.
It is true, as the cases cited by the state hold, that proper objection must be made at the time; that assignments of error in a motion for new trial must call the trial court's attention specifically to the particular matter of complaint; and that in certain instances the request for further action by the court is necessary. Here, however, the objection made was specific. A statement in the objection to the effect that a statute prohibited the remark would have added nothing. State v. Shuls, 329 Mo. 245, 253, 44 S.W.2d 94, 97. Furthermore, when a statement, such as the one here, is not competent for any purpose, a general objection is sufficient. State v. Cardwell, 332 Mo. 790, 797, 60 S.W.2d 28, 31; State v. Leonard, Mo.Sup., 182 S.W. 2d 548, 551 [4].
The assignment in the motion for new trial was sufficiently definite and specific to preserve the alleged error for review. The fact of the reference by the assistant prosecuting attorney to the failure of defendant to testify was set forth. True, the reasons assigned for the alleged erroneous action of the court did not include a statement that the reference made violated the prohibition of a statute. The reasons or grounds set forth were that the argument was inflammatory and would tend to prejudice the jury against the defendant. Such reasons were sufficient because the effect of the violation of the statutory prohibition would be to prejudice the jury against the defendant, and the language in the motion for new trial effectively called the trial court's attention to the alleged error of which defendant complained. In determining what is required to be set forth in a motion for new trial in order to preserve an alleged error for review, the difference between a case like this one, in which the language used in argument states in so many words that defendant failed to testify, and a case in which it is contended that the language used, not in so many words, but by some construction thereof, refers to the failure of defendant to testify, must be kept in mind. From the record in this case, we think it is clear that the particular matter was called to the trial court's attention with sufficient certainty to satisfy the requirements of Sec. 547.030 Mo.R.S.1949.
The objection of defendant to the argument made was overruled. No further action by defendant, such as a request to the court to reprimand the assistant prosecutor or to declare a mistrial, was necessary. This, for the reason that any such requests would obviously have been unavailing. The court had overruled the objection made, thus ruling that the argument was proper and not objectionable. The cases cited by the state in support of *9 its contention that some further request by defendant was necessary, are cases wherein the court had taken all action requested; wherein the trial court had done everything that defendant asked him to do. Obviously, in such situations, it is necessary for defendant's counsel to make some further requests before defendant may convict the trial court of error for failure to take further action. Where, as here, however, the court erroneously overruled a specific objection, any request thereafter for reprimand or mistrial would be a vain and useless procedure.
The state, calling attention to the facts that this case has been twice tried and two juries have found defendant guilty, contends that the improper argument by the assistant prosecutor is not reversible error because, the state says, on the whole record a verdict of guilty would have been reached without the improper argument. There may be cases from time to time in which, from the record, an appellate court can determine that a reference in argument to the failure of defendant to testify did not prejudice the defendant. We are unable to so determine in this case. On the cold record before us, the trial court, by overruling the objection to the argument, put its stamp of approval upon the argument made and thereby made it possible for the jury to believe that an unfavorable inference against defendant affecting his guilt might be drawn from the fact that defendant did not testify. What weight, if any, the jury gave the argument and the ruling of the court thereon, is impossible to say. We think under the circumstances that the error requires us to reverse and remand this case. State v. Shuls, supra; State v. Watson, Mo.Sup., 1 S.W.2d 837.
The case is reversed and remanded.
VAN OSDOL and LOZIER, CC., concur.
PER CURIAM.
The foregoing opinion by COIL, C., is adopted as the opinion of the court.
All concur.