STATE of Missouri, Respondent,

v.

Jerry SPRAGGINS, Appellant.

No. 49201.

Supreme Court of Missouri,

Division No. 1.

June 4, 1963.

Thomas F. Eagleton, Atty. Gen., Paul N. Chitwood, Asst. Atty. Gen., Jefferson City, for respondent.

HOLLINGSWORTH, Judge.

By an information filed in the Circuit Court of the City of St. Louis, defendant was charged with the crime of robbery in the first degree, as defined in § 560.120 RSMo 1959, V.A.M.S., (to which revision all statutory references herein are made unless otherwise indicated). The information also alleged the prior conviction of defendant of the felony of escaping from imprisonment upon a criminal charge, before conviction, for which he had been sentenced to and served a term of six months imprisonment in the St. Louis City Workhouse. Trial to a jury, at which defendant was represented by court-appointed counsel, resulted in a verdict finding defendant guilty of robbery in the first degree as charged in the information. After hearing evidence outside the presence and hearing of the jury, the trial judge found that defendant had also been convicted of and imprisoned for the felony of escaping from imprisonment prior to conviction as alleged in the information. Defendant's motion for new trial was thereafter overruled and he was by the court sentenced to custody of the Department of Corrections of the State of Missouri to be imprisoned in the manner provided by law for a term of seven years. Defendant, by his court-appointed counsel, perfected his appeal to this court, but no brief has been filed in his behalf. We, therefore, review all of the sufficiently alleged assignments of error set forth in his motion for new trial, as required by S.Ct. Rule 27.20, and the portions of the record required by S.Ct. Rule 28.02, 4 RSMo 1959, pp. 4923 and 4925; 1 V.A.M.R., pp. 207 and 235.

The first assignment is that the trial court erred in denying defendant's oral motions for acquittal made at the close of the state's case and at the close of all of the evidence in the case. By offering and adducing evidence in his own behalf, defendant waived any claim of error as to his motion for acquittal offered at the close of the evidence adduced in behalf of the state. State v. Reece, Mo., 324 S.W.2d 656, 658; State v. Brookshire, Mo., 353 S.W.2d 681, 687. The motion for new trial asserts as grounds in support of the oral motion for

acquittal made at the close of all of the evidence (as well as the motion for acquittal made at the close of the state's case in chief) that the evidence in behalf of the state was so contradictory and inconclusive as to defendant's being one of the two persons who committed the robbery herein alleged as to be of no probative value. A statement of the evidence follows.

■ On and prior to December 23, 1960, Fresno Cleaners, Incorporated, operated one of its several cleaning shops at 3500 Cass Avenue in St. Louis. Mrs. Lena Tims was and for several years had been in charge of it. A girl friend of hers, Patricia Ann Robertson, fifteen years of age at trial time (August, 1961), frequented the place as a visitor of Mrs. Tims. About three p. m., on December 23, 1960, two negro men entered the shop. Both men held their hands in their pockets as if they had weapons. One of them handed Mrs. Tims a piece of paper on which was printed the words: "Be quiet, this is a stickup, get me all the money and won't get hurt." That man (later identified by Mrs. Tims and Patricia Ann as the defendant) went to the end of the counter, took Patricia Ann by the back of the neck and led her to the rear of the shop. Mrs. Tims was frightened. At the command of the other man, Mrs. Tims opened the register and he took money from it. The man who led Patricia Ann, who was also frightened, to the back of the shop took money from a cigar box in a rear window sill of the shop. The total amount of money taken by the two men amounted to $26.00. These men then placed Mrs. Tims and Patricia Ann in a bathroom, took some clothing from a rack and left the premises. Mrs. Tims called the police. Thereafter, Mrs. Tims and Patricia Ann viewed defendant, in June, 1961, at the Ninth District Police Station. He was in a police lineup consisting of, as Mrs. Tims said, three men, or as Patricia Ann said, two men. Each of them then and there pointed out defendant as the man who handed Mrs. Tims the note; and, at trial, they again pointed defendant out as the same man, each saying that she was absolutely sure defendant was one of the two holdup men who committed the robbery.

On cross-examination, Mrs. Tims said defendant was brown skinned, wore a light top coat and she thought was wearing a dark hat and dark shoes. He had a gold front tooth and "a sort of a dark mark on his cheek." The other man was dark, very dark. Upon request of counsel for defendant, she pointed out a dark spot on the right side of defendant's face. She had priorly told the police she was not sure as to which side of his face the dark spot was on. On December 31, 1960, a police detective brought a package of pictures (12 to 15 of them) to the shop. Mrs. Tims looked at all of them, picked out the picture of defendant as the man who had handed her the note and had led Patricia Ann by the back of the neck to the rear of the shop. She had seen defendant prior to the robbery but did not know him. She later learned at the police station that his name was Jerry Spraggins.

On redirect examination, Mrs. Tims testified that she now knows there are two Spraggins boys, defendant Jerry and his twin brother, Perry. Defendant is the taller of the two. Perry has a scar on his eye. She could tell them apart. She also saw Perry at the police lineup and told the officer at that time that Perry was not the one who held her up. At the trial, she was shown photographs of defendant and his twin brother, Perry, and correctly identified one of the pictures as a picture of defendant and one as a picture of Perry.

On recross-examination, Mrs. Tims further testified she had worked for Fresno Cleaners at 3500 Cass and prior thereto at its shop across the street for a total of about ten years. When the robbery occurred, she did not know defendant and Perry were brothers. She knew that the one who robbed her, defendant, was the one she had seen before. After learning that he had a twin brother and seeing that brother, she knew that the latter was not one of the two men who committed the robbery.

Patricia Ann Robertson further testified: She was sitting by the counter reading a paper at the time of the robbery. She did not see the men enter. The first she knew of the robbery was when one of the men (whom she later identified as defendant at the police lineup and at trial) took her by the back of the neck and led her into the back of the shop. He there took money from a cigar box on the window sill. She described this man (defendant) to the police as being tall, dark and having a dark spot on his jaw and then wearing a dark coat. Following the robbery, she had told the police she did not know the man's name but she had seen him before.

Police Detective Jerome Weingart assisted in the investigation of the robbery. On December 31, 1960, he exhibited 15 or 20 photographs to Mrs. Tims. She selected from among them a photograph of the man who she said robbed her. That photograph was a picture of defendant. An order was put out for his arrest and he was arrested in June, 1961.

Police Officer Bouchie testified in behalf of the state: On the day of the robbery, he was directed to go to Fresno Cleaners, 3500 Cass. Mrs. Tims told him of the robbery made by two colored males, about 20 years old, about five, nine, weight about 140 pounds; one had dark skin, one was medium brown, one was wearing a light hat and a light coat; one a dark hat and a dark coat. He put the descriptions given him "out over the air"; it was his business only to make a preliminary report and department detectives took over from there for the detailed reports.

Defendant did not testify. The evidence adduced in his behalf consisted of the testimony of Mr. Charles B. Baron, defendant's court-appointed counsel. He testified: On the morning of July 14, 1961, he went to the office of the Fresno Cleaners at 3500 Cass Avenue. Mrs. Lena Tims and Patricia Ann Robertson were present. He identified himself to both of them and stated that he was an attorney and represented Jerry Spraggins and would be defending him at the trial. Mrs. Tims told him that she had identified Jerry Spraggins in the police lineup and from pictures as the man she said was one of the two who robbed her shop on December 23rd. He asked her to describe Jerry Spraggins and she described him "by a gold tooth and by a scar which she said was on the cheek—whether a mark, a dark spot or a scar, she was not positive which, but an obvious spot on the left side of Jerry Spraggins' face." She said that Jerry Spraggins handed her a note, that she thought it was a laundry ticket, it was handed to her folded up, it was white and she thought it was a laundry ticket for clothes which had been left at her shop by either Marilyn Spraggins, whom she identified as Jerry Spraggins' mother, or by a Mrs. Pitchford, whom she identified as his grandmother. She also stated that the man she identified as Jerry Spraggins went to the end of the counter and she turned and opened the note; that Jerry Spraggins then took Patricia Ann to the back of the store, at which time the other man who was in the store went with her to the cash register. She said she did not get as good a look at defendant as she did at the other man, because the other man was with her throughout the robbery and stood with her at the cash register at that time.

"This court passes upon the credibility of testimony in criminal cases only insofar as it is necessary to determine whether or not the testimony constitutes evidence sufficient to permit reasonable minds to believe the defendant guilty beyond a reasonable doubt, reserving the power to grant relief only when the denial of it would shock the sense of justice. State v. Dupepe, Mo.Sup., 241 S.W.2d 4, 7. Where the evidence is substantial, the effect of conflicts or inconsistencies or mere improbabilities are questions for the jury in the first instance. State v. Hadley, Mo.Sup., 249 S.W.2d 857, 861. Thereafter, it is the province of the trial court to determine whether the verdict is against the greater weight of the evidence, and its finding in

that respect will not be set aside unless an abuse of its discretion clearly appears. State v. Whitman, Mo.Sup., 248 S.W. 937, 938. The Supreme Court will not weigh the evidence where there is substantial evidence to support the finding of the jury and the judgment of the trial court. State v. Emrich, Mo.Sup., 250 S.W.2d 718, 725." State v. Nash, Mo., 272 S.W.2d 179, 183.

The evidence in this case is sufficient to support the verdict. Defendant was positively thrice identified by Mrs. Tims and twice so identified by Patricia Ann. Both were in a position during the course of the robbery to observe his features and both then and there recognized him as a man whom they had priorly seen. Discrepancies in their testimony as to his dress at the time of the robbery, the precise location and descriptions of certain markings on his face and the like are not so self-destructive as to render the evidence adduced in behalf of the state insufficient as a matter of law to support the verdict rendered. See State v. Dupepe, Mo., 241 S.W.2d 4, 6–7, wherein contentions similar to the contentions here made in connection with a fact situation fairly analogous to that here presented were held insufficient to set aside a verdict finding defendant in that case guilty of robbery.

■ The second assignment of error is that the court erred "in overruling defendant's general and specific objections that the instructions given by the Court [which], by their form, distorted the burden of proof, substantially lessening the burden upon the State. In closing argument, the State seized upon a portion of the objectionable language of the instructions and repeatedly emphasized that *'a mere possibility'* of innocence was not sufficient ground for finding the defendant not guilty. This constant reference to a test other than the legal test that defendant's guilt must be proved beyond a reasonable doubt substituted a lesser standard for the one on which defendant must be tried, namely, that his guilt be proved beyond a reasonable doubt. * * * The words 'a mere possibility of innocence'

were not used merely to explain reasonable doubt but became, instead, a new and different standard." The record shows that at the close of all of the evidence, the trial court advised counsel for defendant that, among other instructions, the court proposed to give Instruction No. 2, in words following:

"The Court instructs you that the law presumes the Defendant to be innocent, and this presumption continues until it has been overcome by evidence which establishes the Defendant's guilt beyond a reasonable doubt; and the burden of proving Defendant's guilt rests with the State. If, however, this presumption has been overcome by the evidence and the guilt of the Defendant established beyond a reasonable doubt, your duty is to convict. But if, upon consideration of all the evidence, you have a reasonable doubt of the Defendant's guilt, you should find the Defendant not guilty. A reasonable doubt should be a substantial doubt as to the Defendant's guilt, and not a mere possibility of Defendant's innocence."

Counsel for defendant thereupon objected to the giving of Instruction No. 2 on grounds that "the second to last and last sentences of the presumption of innocence instruction be reversed to reflect that the burden is on the State to prove its case beyond a reasonable doubt so that when reversed if the Jury from the instructions believes that the Defendant, that it has a reasonable doubt of the Defendant's guilt that it find him not guilty." Suffice to say that Instruction No. 2, both in substance and in arrangement, has been so many times approved by this court that discussion of the charge here leveled against it is unnecessary. State v. Berry, Mo., 237 S.W.2d 91, 93; State v. Velanti, Mo., 331 S.W.2d 542, 545. The contention is overruled.

■ The third assignment of error is that the court erred "in reserving the right to itself to decide if defendant's Exhibits A and B would go to the jury for its considera-

tion during its deliberations and then did not send these Exhibits to the jury. Said Exhibits A and B are St. Louis Metropolitan Police Department photographs of the defendant (Exhibit B) and his identical twin brother, Perry Spraggins (Exhibit A)." The assignment is quite evidently made under a misapprehension as to what the record shows. Exhibits A and B therein referred to are photographs taken by the St. Louis Metropolitan Police Department of (A) Perry Spraggins and (B) defendant. At request of counsel for the defendant, they were so identified at the trial by Police Detective Weingart. Thereafter the following occurred:

"MR. BARON: May I have those pictures? At this time I would like to have the pictures, Exhibits A and B shown to the Jury.

"MR. ROCHE: No objection.

"THE COURT: All right.

"(Thereupon, Defendant's Exhibits A and B were passed among the Jury."

The assignment is without merit.

■ The fourth assignment is that the court erred "in failing to declare a mistrial or in the alternative, in failing to instruct or caution the jury with respect to the categorical statements made by the State in closing argument that defendant, Jerry Spraggins, is the man who committed this crime. Said statement, made on two occasions, invaded the province of the jury on the ultimate issue which it had to decide, to the extreme prejudice of defendant. * * * No objection was made by defendant to said statements at the time they were made, but said statements were so clearly improper and prejudicial to defendant as to require the intervention of the Court on its own motion." Again counsel for defendant apparently labors under a misapprehension as to what the record shows. The extracts from the argument, as set forth in the record by agreement of counsel and approved by the court, show that counsel

for the state, in opening argument, made a detailed statement of the evidence and contended that such evidence showed defendant's guilt beyond all doubt; that thereafter counsel for defendant argued the cause, but what he said to the jury is not shown. Thereafter, in closing argument, counsel for the state, to the extent here material, said: "Now counsel [for defendant] indicated to you that I wanted you to convict for a conviction, but if I left that impression, I am sorry. I don't want you to convict just anybody, that would be lawlessness at its worst. I ask you to convict because there was a crime committed and this is the man that did it. I don't want you to convict just anybody, I want you to convict this man, he is the man that committed this robbery. * * * I ask you to review the evidence in your own minds, when you go downstairs, which is your duty. And remember my burden was to prove this case beyond a reasonable doubt, and I submit to you I have proven it beyond all doubt." The assignment is without merit.

■ The fifth assignment is that the court erred "in failing to sustain the specific objections of the defendant to the instructions given by the Court. Said objections should have been sustained on the specific grounds set forth in making said objections." The record shows that the so-called "specific" objections to the four instructions given by the court were: "At this time, the Defendant objects generally to Instructions Nos. 1, 2, 3 and 4 and for failure to correctly state the law applicable to the facts in this case, and the Defendant objects specifically to each instruction for the same grounds. The Defendant further objects generally to all of said instructions for the reason that taken together said instructions do not fairly and adequately reflect the burden upon the State in proving its case beyond a reasonable doubt, and that said instructions taken together give a total impression that is not consistent with the applicable, to the Defendant's constitutional and statutory right not to testify against himself and do

not reflect that the Defendant need produce no evidence, and for the reason among others stated at the time of requesting that the Instruction 2 be modified by the Court, that said instructions could not properly leave the impression that the State must prove its case beyond a reasonable doubt." The foregoing assignment (except possibly as to the objection leveled against Instruction 2, which we have hereinabove considered), even when supplemented by reference to the record, wholly fails to comply with S.Ct. Rule 27.20 requiring that the motion for new trial "must set forth in detail and with particularity, * * *, the specific grounds or causes therefor." Such an assignment as here made preserves nothing for review. State v. Brewer, Mo., 338 S.W.2d 863, 868; State v. Williams, Mo., 343 S.W.2d 58, 62; State v. Richardson, Mo., 343 S.W.2d 51, 54; Vol. 9A Mo.Dig., Criminal Law, ⊜ 1064 (7).

 Assignment No. 6 reads: "The verdict was against the evidence on the grounds hereinbefore stated in this motion and on a consideration of the record as a whole." Assignment No. 7 reads: "The verdict was against the evidence and the weight of the evidence." Assignment No. 8 reads: "The verdict was against the law and the evidence on the grounds hereinbefore stated and on consideration of the record as a whole." Each of these assignments, for the reasons stated as to assignment No. 5, also fails to comply with S.Ct. Rule 27.20 and presents nothing for review. See cases cited in 9A Mo.Dig., Crim.Law, ⊜ 1064(1), 1064(5), 1064(6) and 1064(7).

The final assignment (No. 9) reads: "Defendant is entitled to a new trial on the basis of newly discovered evidence relating directly to defendant's innocence with respect to the alleged crime." Nowhere in the record do we find any statement or proof or offer of proof as to any newly discovered evidence. The mere allegation set forth in the motion does not prove itself. Moreover, the assignment is insufficient to preserve anything for review under S.Ct. Rule 27.20, supra.

The record shows that the information follows in substance the wording of the statute, § 560.120 defining robbery in the first degree and is in due form. State v. Moore, Mo., 347 S.W.2d 195. Defendant and his counsel were personally present at all trial and all pretrial and aftertrial proceedings. The verdict is in due form, responsive to the issues and the punishment assessed is within the limits fixed by statute, §§ 560.135, 556.280. Defendant was granted due allocution and the sentence and judgment are in due and legal form.

The judgment is affirmed.

All concur.