383 S.W.2d 518 (1964)
STATE of Missouri, Respondent,
v.
Jerry WASHINGTON, Appellant.
No. 50588.
Supreme Court of Missouri, Division No. 2.
November 9, 1964.
*520 Thomas F. Eagleton, Atty. Gen., Jefferson City, James W. Steele, Special Asst. Atty. Gen., St. Joseph, for respondent.
John Peters MacCarthy, St. Louis, for appellant.
STORCKMAN, Presiding Judge.
A jury found the defendant guilty of robbery in the first degree. Section 560.120 RSMo 1959, V.A.M.S. Pursuant to a stipulation of the parties, the court found that the defendant had been previously convicted of second-degree burglary for which he had been imprisoned. Therefore, the defendant's punishment was assessed by the court and he was sentenced to five years in the custody of the Department of Corrections. Sections 556.280 and 560.135. The principal contentions on appeal are that the conviction is not supported by substantial evidence because the testimony of the witnesses for the prosecution was so inconsistent that it was entirely discredited, that the court erred in admitting certain evidence, and that an instruction given on behalf of the state was prejudicially erroneous.
In determining the sufficiency of the evidence to support the conviction, the appellate court must consider as true the evidence favorable to the state together with all favorable inferences that can reasonably be drawn therefrom, and evidence to the contrary must be rejected. State v. Sykes, Mo., 372 S.W.2d 24, 26[3]; State v. Selle, Mo., 367 S.W.2d 522, 527-528[13].
On Saturday, July 13, 1963, at about 2 a. m., Mozil Lane aged 37, was in the vicinity of Elliott and Gamble Streets in the City of St. Louis, at which time he started walking north on Elliott Street toward his home. When he was about five houses north from the corner of Elliott and Gamble, he saw two youngsters he knew sitting on the steps of a building at 1218 Elliott. They were Sheraldine Perkins, 17 years of age, and her boyfriend Jerry Jackson. Mozil Lane also sat down on the steps with them. After he had been talking with Sheraldine and Jerry for about fifteen minutes, the defendant Jerry Washington, aged 24, and a man known to Lane as Chili came along. The defendant asked Mozil Lane for money and was told by Lane that he didn't have any money. Thereupon, the defendant picked up a large beer bottle and Lane got to his feet. As he did so, the defendant's friend Chili grabbed Lane around the waist from the rear and held both of his arms. While Lane was so held, the defendant struck him with the beer bottle several times on the cheek and about the head, knocking out a tooth and inflicting cuts and bruises. When Lane said he would give them his money, the defendant stopped hitting him. Lane took from his watch pocket four $10 bills which the defendant took from Lane's hands. The defendant searched Lane further and took his keys, pocket knife, and some additional change in excess of $2. The defendant and Chili then walked on down the street.
Lane went into a nearby house and then on to his own home. He stayed in bed Saturday and Sunday and was taken care of by his mother but did not seek medical attention. On Monday he reported the robbery to the police. Lane knew the defendant and gave the defendant's name and description to the police. The defendant was arrested on August 2, 1963, and Lane identified him in the police station and again at the trial as the man who robbed him. The defendant was also identified by Sheraldine Perkins.
The defendant testified in his own behalf and denied that he robbed Mozil Lane. His testimony was that on the night in question he had been gambling at the corner of Elliott and Gamble, that he left the crap game and was walking north on Elliott when Lane tried to stop him and obtain some money from him. This led to an argument and a fight between the two men, but there was no robbery according to the defendant. London *521 English, Jr., also testifying for the defense, stated that he knew the defendant and that he heard an argument between the defendant and another man which developed into a fight. This was on Elliott Street, three or four doors north of Gamble; he thought it was on a Friday night during the previous summer, but he was not sure of the month or the date. He could not say that the man the defendant was fighting with was Mozil Lane.
Sheraldine Perkins in rebuttal testified in substance that the defendant asked for money and when Lane refused to give him any she and her boyfriend got up from the steps and walked over to a car at the curb about ten feet away so that they could discuss a personal problem. She heard Mozil Lane say, "Take my money; it's in my watch pocket, but don't hurt me." The three men were fighting and moving around. Mozil Lane was trying to get away. She saw the defendant and his companion going through Lane's pockets. The defendant and his companion then let go of Lane and he fell to the ground. The defendant looked at some papers he had taken, threw them down, and walked away. Sheraldine told Lane to go home and wash his face but did not offer further assistance or call the police.
Direct evidence bearing on the robbery was given by Mozil Lane and Sheraldine Perkins, but the defendant contends that the entire testimony of each of these witnesses must be discredited and disregarded because of inconsistencies. He cites and relies upon Siegel v. Missouri-Kansas-Texas R. Co., 342 Mo. 1130, 119 S.W.2d 376, Steele v. Kansas City Southern Ry. Co., 265 Mo. 97, 175 S.W. 177, and Adelsberger v. Sheehy 332 Mo. 954, 59 S.W.2d 644. These decisions are not applicable because the unexplained conflicts and inconsistencies in the testimony in those cases left the verdict without evidential support upon a vital point or issue. In the present case the testimony claimed to be inconsistent could be entirely eliminated and a submissible case remain. It is not necessary to review all of the alleged inconsistencies. Recitation of a few of them will demonstrate their nature. For instance, the defendant claims that while on the stand Mozil Lane contradicted himself as to the length of time he had known the defendant. It is claimed that Lane stated that he had last seen the defendant three months before their fight and that subsequently he admitted seeing the defendant during the three-month period and seeing him as a usual winner in gambling games. Also, it is said that Mozil Lane testified that he was knocked out by the defendant's first or second blow and that he did not know what happened but that he, nevertheless, testified in detail about the alleged robbery. This claim is based upon Lane's answer to the prosecutor's question as to the number of times he was hit by the defendant. Lane's reply was: "Well, that first or second lick had knocked me out because he knocked out my teethseehit me up here (indicating). I was bloody. I don't know exactly how many licks he did hit me, but I do know he hit me." His answer to the question was that he did not know exactly how many times he was hit which is understandable even though he were fully conscious. The answer is also susceptible to the interpretation that he was talking about his teeth being knocked out or that he was momentarily dazed while the beating was taking place. At no time did he make the assertion that he was rendered unconscious by the blows and was thereafter insensible to what occurred, as happened in the Siegel case. In fact his testimony was to the contrary. He related how he offered to give up his money and did make $40 available, and how the defendant took from his pockets more money and personal property.
Complaint is made of the testimony of Sheraldine Perkins because she was unsure whether July 13, 1963, fell on a Saturday. The defendant further asserts that Miss Perkins first testified that she heard the defendant twice ask Lane for money and then on cross-examination stated she and her companion had moved away and that she *522 heard nothing until the fight began. The defendant further asserts that there were contradictions between the testimony of Mozil Lane and Sheraldine Perkins.
It is sufficient to say that there was no destructive contradiction in the testimony on any vital point or element of the offense of first-degree robbery. Where the evidence in support of the verdict is substantial, the effect of conflicts or inconsistencies in the testimony of a single witness or between witnesses are questions for the jury's determination. State v. Spraggins, Mo., 368 S.W.2d 407, 410[4]; State v. Nash, Mo., 272 S.W.2d 179, 183[3].
Further, the defendant asserts that Mozil Lane's credibility was impeached by a showing of prior inconsistent statements which discredited his entire testimony. The alleged inconsistency was that Lane denied that he had been gambling with the defendant on the night of the robbery, whereas a statement in the police report recited that he and several other men including the defendant were gambling on the northeast corner of Elliott and Gamble and that he, Lane, lost several dollars. Again this is not a vital point or element in the case. If there is any inconsistency, it goes only to Lane's credibility and does not necessarily destroy his entire testimony. There was substantial evidence to support the verdict finding the defendant guilty of robbery in the first degree. State v. Pope, Mo., 364 S.W.2d 564, 565-566 [1]; State v. Jackson, Mo., 371 S.W.2d 309, 310[2]; State v. Hood, Mo., 313 S.W.2d 661, 663[3]. The court did not err in failing to direct a verdict of acquittal.
Next the defendant contends that the verdict was against the weight of the evidence because of inconsistencies in the testimony of Mozil Lane and Sheraldine Perkins and because the testimony of London English, Jr., supported the inference that no robbery occurred. These and other similar matters complained of are for the determination of the jury in the first instance and finally the trial court in ruling the motion for new trial. It is not in the province of the appellate court to weigh the evidence where there is substantial evidence to support the finding of the jury and the ruling of the trial court. State v. Williams, Mo., 376 S.W.2d 133, 136[9-11]; State v. Spraggins, Mo., 368 S.W.2d 407, 411 [6]; State v. Nash, Mo., 272 S.W.2d 179, 183 [4]. There is no basis for interference by this court. The assignment is denied.
The defendant next contends that the court erred in admitting the evidence of Mozil Lane without permitting the defendant to examine for impeachment purposes the police report containing a statement by Lane alleged to be inconsistent with his direct testimony. At the conclusion of the direct examination of Mozil Lane, defendant's counsel informed the court that before he cross-examined the witness he would "like to see the police report on him." The prosecutor produced a copy of the report which was in his possession but objected to its use. The court examined the report and permitted defendant's counsel to see those portions purporting to report in summary form what Lane had told the police officers. The court ruled that the defendant could use the report insofar as it contained any impeaching statements made by the witness to a police officer if a proper foundation was laid. Defendant's counsel's objection to Mozil Lane's testimony on the ground that he had not seen the police report in its entirety was overruled and he proceeded to cross-examine Lane. During the cross-examination, Lane asked for the first time whether he had been gambling that night "around 2:00 a. m." The witness admitted he had gambled a "little bit on the corner" earlier in the evening, and that he "had been in gambling games" with the defendant during the previous three months, but denied he had been gambling with the defendant on the night in question and denied that he had told the police otherwise. At this point, defendant's counsel requested that he be permitted to read to the witness a statement from the police report.
*523 The court ruled that the information could only be used after a foundation had been laid by the testimony of police officers. The cross-examination continued and, among other things, the witness was interrogated about answers given when his deposition was taken by the defendant.
Patrolman Bobby Fowler of the St. Louis Metropolitan Police Department assisted in the investigation of the robbery and made the report of the defendant's arrest for the police records. He testified on cross-examination that Lane had told him that he, Lane, had been involved in gambling earlier in the evening when the defendant was present, but the officer could not recall if Lane had said he had gambled with the defendant. Defendant's counsel was then permitted without objection to have the officer read into evidence the following statement from the arrest report: "`Lane was then questioned relative to gambling with the arrested subject, Washington, at which time he stated on July 13, 1963, at about 2:00 a. m., he and several other men, including Washington, were gambling on the northeast corner of Elliott and Gamble. He lost several dollars and then departed. Washington and another unidentified Negro male followed and robbed him.'"
The record does not disclose what parts of the police report were not shown to defendant's counsel, but apparently the court examined the report and determined what portions might have value for impeachment purposes and permitted them to be used. The cases cited by the defendant do not establish that he was denied any right of discovery or process for bringing into court any relevant evidence. On the record before us, the defendant obtained at least as much as he was entitled to under the circumstances, and there is no showing that he was prejudiced in not being permitted to examine the entire police report. The assignment of error is denied. State v. Simon, Mo., 375 S.W.2d 102, 104[1]; State v. Hale, Mo., 371 S.W.2d 249, 253[4]; State v. Gilliam, Mo., 351 S.W.2d 723, 727-728[12]; State v. Crayton, Mo., 354 S.W. 2d 834, 837-838[3]. See also State v. Engberg, Mo., 377 S.W.2d 282, 286[9, 10]; State v. Miller, Mo., 368 S.W.2d 353, 357 [3-5]; State v. Cochran, Mo., 366 S.W.2d 360, 361 [1], and State v. Redding, Mo., 357 S.W.2d 103, 109 [17].
Next the defendant contends that the trial court erred in admitting evidence of the defendant's punishment by imprisonment for a prior conviction. During the defendant's cross-examination, he was asked whether he had served time with the Department of Corrections. Out of the hearing of the jury the court sustained defendant's objection on the ground that the fact of defendant's imprisonment had no bearing on his truth or veracity. Within the hearing of the jury, the prosecutor asked if the defendant had been with the Department of Corrections in Algoa and the court on its own accord stated that an objection had been sustained to that question. On further cross-examination, the defendant testified that he was convicted of second-degree burglary in 1957, tampering with a motor vehicle in 1960, and of common assault in 1962.
A person who has been convicted of a criminal offense is a competent witness, but his conviction or convictions may be proved to affect his credibility either by the record or by his own cross-examination. Sections 491.050 and 546.260 RSMo 1959, V.A.M.S.; State v. Wolfe, Mo., 343 S.W.2d 10, 14[5, 6]; State v. Lunsford, Mo., 338 S.W.2d 868, 873[8]; State v. Hacker, Mo., 214 S.W.2d 413, 416[7]. Not only may the fact of a prior conviction be shown but it is also proper to show the nature of the crime and the punishment assessed as matters affecting the defendant's credibility as a witness. State v. Hood, Mo., 313 S.W.2d 661, 663-664[4]; State v. McBride, Mo., 231 S.W. 592, 593[3]. If anything, the court's ruling was too favorable to the defendant. The situation in the instant case is wholly unlike State v. Jackson, 336 Mo. 1069, 83 S.W.2d 87, 103 A.L.R. 339, where the fact of conviction was misused in that the state in closing *524 argument urged the conviction as a reason for inflicting the death penalty.
Next the defendant contends that the trial court erred in admitting the testimony of Sheraldine Perkins because her name was not endorsed on the information and because her testimony went beyond the scope of rebuttal and corroborated the testimony of Mozil Lane. At the conclusion of the defendant's case, the state offered Miss Perkins as a rebuttal witness and the defendant objected because her name was not endorsed on the information. When an information or indictment is filed, it is required both by supreme court rule and the statutes that the names of all material witnesses for the prosecution be endorsed thereon. S.Ct. Rule 24.17, V.A.M.R., §§ 545.070 and 545.240, RSMo 1959, V.A.M.S. This court has held, however, on numerous occasions that the rule and statutes do not apply to rebuttal witnesses. State v. Payne, Mo., 342 S.W.2d 950, 954[4, 5]; State v. Ronimous, Mo., 319 S.W.2d 565, 568[8]; State v. Malone, Mo., 301 S.W.2d 750, 758[25]. The court did not err in permitting Miss Perkins to be sworn as a rebuttal witness.
The other facet of defendant's contention is that the trial court abused its discretion and prejudiced the rights of the defendant because the testimony of Sheraldine Perkins went beyond the scope of rebuttal and corroborated the testimony of Mozil Lane. In the course of his testimony, the defendant stated that there was no such person as Chili, that he did not remember being with anybody else on the night in question, that he did not remember a young boy by the name of Jerry and a girl by the name of Sheraldine being seated on the steps of 1218 Elliott, that he did not remember demanding money from Lane and striking him while an accomplice held Lane. Contradicting the defendant in these respects was properly within the scope of rebuttal evidence and Miss Perkins so testified. In this and other respects, she tended to corroborate the testimony of Mozil Lane although their testimony did not cover the same scope exactly since Sheraldine did not see any money taken from the person of Mozil Lane even though she saw the defendant searching his pockets.
The scope of rebuttal testimony is largely within the sound discretion of the trial court and, unless the trial court has abused its discretion to the prejudice of the defendant, the reviewing court will not reverse the judgment on that ground even though the evidence is not strictly or entirely rebuttal. State v. Sawyer, Mo., 365 S.W.2d 487, 490-491 [3]; State v. Arrington, Mo., 375 S.W.2d 186, 195[21]; State v. Dees, Mo., 276 S.W.2d 201, 206-207[11]. There is no showing that the defendant was surprised and did not have an opportunity to explain or rebut the evidence. The trial court did not abuse its discretion in admitting the testimony.
Instruction No. 1 given at the request of the state hypothesized the facts necessary to a finding that the defendant had committed the offense charged and concluded with the direction that if the jury so found "then you will find the defendant guilty of Robbery in the First Degree; and you will acquit the defendant if you fail to find all of the aforesaid facts as stated." The defendant asserts the instruction is erroneous in that "it directed the jury to acquit appellant only if it failed to find ALL rather than ANY of the facts as stated therein, and thus permitted a verdict of guilty on an offense not included in the information against appellant."
The defendant cites cases holding that the jury must be instructed to find all the essential elements of an offense in order to find the defendant guilty and concludes that "the jury should have been directed to acquit appellant if it failed to find any rather than all of the facts as stated in the instruction." This substitution would not improve the situation but would make it *525 worse in that it could be argued that the defendant could not be acquitted if any, that is, any single one, of the essential elements of the crime was proved.
The clause, "you will acquit the defendant if you fail to find all of the aforesaid facts as stated", has been commonly used in such instructions, and State v. Bland, Mo., 353 S.W.2d 584, held that it did not "fail to make clear the jury's duty to find defendant not guilty if it failed to find the hypothesized facts beyond a reasonable doubt." 353 S.W.2d 589. In Webster's Third New International Dictionary, one of the several closely related definitions of the adjective "all" is "each and every one of". Substituting this definition in the clause we have: "You will acquit the defendant if you fail to find each and every one of the aforesaid facts as stated." Unless "all" or "each and every one" of the essential facts are found, the defendant is entitled to be acquitted. The clause is grammatically correct and counsel doubtlessly further expounded during oral argument the burden the instruction placed on the state. The jury could not have been misled.
The instruction also tells the jury the offense may consist of taking "Forty Dollars, or any part thereof however small". The defendant says this permits conviction of an offense not charged in the information which alleges the taking of Forty Dollars. The statute, § 560.120, covers "taking the property of another from his person" without regard to the amount. In a robbery prosecution proof of the exact value of the property taken is unnecessary if it appears that the property taken had some value since the amount thereof is immaterial. State v. Biven, Mo., 151 S.W.2d 1114, 1117[4-6]; State v. Gabriel, 342 Mo. 519, 116 S.W.2d 75, 77 [3-6]. The instruction is not subject to the errors alleged.
We have considered all questions presented for review and find them to be without merit. The defendant was present throughout the trial including his allocution and sentencing. He was effectively represented by able counsel throughout the trial and on appeal. We have also examined the parts of the record and entries designated in S.Ct. Rules 28.02 and 28.08, V.A.M.R., and find them to be in proper form and free from error.
Accordingly the judgment is affirmed.
All of the Judges concur.