**STATE of Missouri, Respondent,**

v.

**Ellen L. PAYNE, Appellant.**

**No. 56656.**

Supreme Court of Missouri,
Division No. 1.

Sept. 11, 1972.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

George E. Sullivan and Michael A. Turken, O'Fallon, for appellant.

HIGGINS, Commissioner.

Ellen L. Payne, charged with assault with intent to kill her husband, Larry Payne, with malice aforethought, was convicted of assault with intent to do great bodily harm without malice aforethought, by a jury which assessed her punishment at imprisonment in the county jail for one year. Sentence and judgment were rendered accordingly. §§ 559.180, 559.190, V.A.M.S.

Appellant contends, among other things, that the evidence was not sufficient to sustain the conviction. Accordingly, the evidence, all of which was adduced by the state, will be stated in detail and considered in the light most favorable to the state. Rule 26.10, V.A.M.R.

On May 13, 1970, Larry Dale Payne resided with his wife, defendant Ellen Payne, and their infant son, Tony, at 3153 Holiday, St. Louis, Missouri. At approximately 4:45 p. m., he returned home from work. " * * * my wife met me at the door and she acted sort of nervous at first. She said she had been having dreams or halucinations [sic] or something and that she had seen me in the woods dead." At about 5:15 p. m., his brother, sister-in-law, and nephew came and talked for awhile and then went to eat. Mrs. Payne stayed at home. The party returned about one hour later and Mr. Payne's relatives remained until about 10:00 p. m. He went to bed at 10:30 and was awakened by his wife around 12:00 or 12:30. " * * * she said that there was two men in the house and one of them had a knife on my baby. * * * I asked them what did they want and the one that had the child said they wanted a ride to West Alton. * * * The one holding my child instructed me to get dressed. * * * after I was dressed the one who had the knife on the child said for me not to do anything because there was another with a gun. * * * I told them I wouldn't do anything as long as they didn't hurt my wife and child. * * * the one holding my child instructed me to go down to the front of the house where my car was. * * * he told me to get in on the passenger side and slide across. He still had the baby. * * * He instructed me to drive around in the alley in the back of the house where my wife and the other person got in." The man with the baby occupied the right-hand front seat; the other man occupied the right rear seat, and Mrs. Payne was "more or less in the middle" of the rear seat. The men instructed Mr. Payne to drive to Racoon Farm off Highway 94 in St. Charles County, Missouri. " * * * After I had parked the car the one holding my child instructed me to get out * * *. He got out on the other side and said don't do anything because the other guy has a gun. * * * After that, he told me to walk towards the woods, that he was going to knock me out so I wouldn't be able to call the police * * *. After we got in the woods, he instructed me to take off my shirt and wrap it around my head. * * * He said to take a deep breath of air because he was going to knock me out. * * * I felt the sting of the knife blade. * * * In my right abdomen. * * * I fell down in the woods. There was a lot of weeds near there and I just layed [sic] there until after they left."

After the automobile left, Mr. Payne made his way to the farm residence of Emil B. Klass. He arrived there around 2:30 a. m. and called the sheriff and an ambulance.

Mr. Payne had met (Gary) Johnson before he married Mrs. Payne. "It was on a date with some friends. * * * She told me before we were married that he was an ex-boy friend." He knew of no acquaintanceship between Mrs. Payne and (Kenneth) McGraw.

Mr. Payne identified some letters received by him from Mrs. Payne during her incarceration prior to trial. They were read in evidence and included these excerpts:

"I went along with all of this for Tony. * * * Please don't teach him to hate me. Tell him I am dead. Don't tell my baby what I did. I'm sorry, Larry. I wish I could change things but I can't."

"Oh, Yes, you are probably saying that none of these people [Larry's mother and alleged boyfriends] tried to kill someone. It is true but they might as well stick a knife in me because they would love to."

Mr. Klass observed Mr. Payne's distress and assisted in calling the sheriff and an ambulance. Mr. Payne told him only that he had been stabbed.

Paul David Orf, a police officer in St. Charles, saw Mrs. Payne around 2:50 a. m., riding in a car which he stopped because he thought she was a juvenile out beyond curfew. The car was occupied by

male subjects named Johnson and McGraw, and Mrs. Payne and her baby. Mrs. Payne was seated in the middle of the front seat holding the baby. The men were on either side of her with Johnson driving. The driver did not have a driver's license. "He was military personnel home on leave and they would be back in service before the court date, so, normally, we try to work with them." They asked directions to get to St. Louis. Officer Orf gave the requested directions and let them go. He learned from Mrs. Payne that the car belonged to her husband, Larry Payne. She appeared to be calm.

Larry J. Conner of the St. Louis Police Department saw Mrs. Payne around 5:30 a. m. at her home. He was investigating the whereabouts of her husband. She stated she had been home all evening with her baby.

■ The foregoing evidence would make a case of felonious assault against Kenneth McGraw and Gary Johnson. However, the evidence is wholly circumstantial that the person who committed the assault was defendant Ellen Payne and, in such situations, the facts and circumstances relied upon by the state to establish guilt must be not only consistent with each other and with defendant's guilt, but must also be inconsistent and irreconcilable with her innocence and must point so clearly and satisfactorily to guilt as to exclude any reasonable hypothesis of innocence. State v. Aguilar, Mo., 429 S.W.2d 754, 756[1].

■ The evidence in this case is as consistent with an inference that defendant was just as much a hostage as was her baby, and just as much a potential victim of an assault as was her husband, as it was with an hypothesis of guilt of the crime charged. Even statements attributed to her and the excerpts from her letters are as consistent with fear for safety of herself and her child as they are with any suggested admission of guilt. Such showing is not enough to sustain the state's burden of establishing defendant's guilt, either

as a principal or as an aider and abettor. State v. Irby, Mo., 423 S.W.2d 800.

Judgment reversed.

WELBORN, C., not sitting.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.