**STATE of Missouri, Respondent,**

v.

**James Ronald CANNON, Appellant.**

**No. 57268.**

Supreme Court of Missouri,
Division No. 1.

Nov. 13, 1972.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

John J. Frank, St. Louis, for appellant.

JAMES H. KEET, Jr., Special Judge.

Defendant was tried as a second offender for the crime of robbery in the first degree by means of a dangerous and deadly weapon, and after jury verdict of guilty the court assessed punishment at 15 years. §§ 556.280, 560.120, 560.135, V.A.M.S. Defendant has duly appealed (before January 1, 1972).

■ Defendant's first point relied on is that the verdict was contrary to the weight of the evidence. This presents nothing for review since the weight of the evidence is always for the jury. State v. Koen, Mo., 468 S.W.2d 625. Defendant's other point relied on is that as a matter of law there is a reasonable doubt as to defendant's guilt. The evidence will be considered in the light most favorable to the state. Rule 26.-10, V.A.M.R.; State v. Payne, Mo., 484 S.W.2d 265; State v. Harris, Mo., 452 S.W.2d 577, 579. It was sufficient to warrant the jury in finding the facts detailed herein.

The robbery occurred about 10:00 p. m. on April 20, 1971, in the Velvet Freeze store at 5205 Gravois in St. Louis City. Two young white men entered the store, the taller one with a blue steel handgun in his right hand. Thelma Miller, a widow, alone in the store as clerk, gave in-court identification testimony with the defendant being out of the courtroom (at his request and with permission of the court). She had not reviewed any prior reports or statements, but had glanced at two photographs lying on the prosecutor's table without having been asked to do so. She did not need the pictures to help her in her in-court identification. The faces of the two men were imprinted in her memory, which was good for faces. The men had been in the store within the last week on a Sunday, when she had watched them closely because they were the only ones in the store. After direct and cross-examination of Mrs. Miller, the sheriff brought the defendant in the courtroom and she identified him, saying she had no question in her mind on it.

On the night of the robbery, while Mrs. Miller was standing by the register, the men came in and said, "This is a robbery". The taller one (identified by her as the defendant) laid his right hand across his arm and said, "Open the register", and with his right hand moved the gun across his arm at her. The other told her to put the money (at least $40 and closer to $75) in a bag, which she did. She did not know whether the gun was real or not, but it had a 6″ or 7″ long barrel. As the men left, the taller one pointed the gun at her and said to keep still. The men were in the store not over three minutes, but she got a good look at them. The store was thoroughly lighted inside and out. Mrs. Miller described them as bareheaded, without glasses or masks, and "light-complected"; the taller one about 5′9″, very slim, wearing a faded blue sweatshirt, with sideburns and long brown hair, with nothing unusual about either of his hands, a "chiseled" face with no scars on it, and the meanest eyes she had ever seen (as she put it, she had "seen bulls that did not have any meaner eyes" and she "wouldn't want to be married to anyone like that"). About 45 minutes after the robbery, the police brought the two men to the store. She recognized them immediately as they started crossing the street toward the store. The taller one was then wearing a faded pink shirt and an Eisenhower jacket. The police previously had brought three other men for her to see. She had said that they were not in the robbery.

During the robbery Angelo Pezzani, a law clerk and graduate, with his wife and children, had drive up to the parking place he normally used for his home (next to the store). He found the space occupied by a car with a man at the wheel, its lights off and motor running. After the driver, at Pezzani's request, moved the car, Pezzani saw two young men run behind him and

jump in it. They were thin, long-haired, hatless, and without sun glasses. The taller one had a dark-colored gun and a large object. He did not see their faces. He wrote down the car license number (which he remembered at the trial), and telephoned it and the car's description to the police. The car, owned by defendant's mother, was found at defendant's home, 6 or 8 blocks away, about twenty minutes after the robbery, its motor hot.

Defendant did not testify, but offered alibi testimony (by a brother) and his mother's testimony that he was left-handed and had a tattoo on his left hand. Defendant urges that he was convicted solely on Mrs. Miller's testimony and that it created only a "suspicion of guilt" because it "overlooked" defendant's being left-handed and because it overlooked the tattoo, even though (defendant asserts) she had looked right at the gun and his hands. The evidence does not show that she actually saw his left hand. She testified that her eyes were on the gun barrel and that she noticed nothing unusual about his right hand (with no mention of his left hand) except that he had a gun in it. Defendant had a tattoo, if at all, only on his left hand.

The closing arguments were not included in the transcript. We cannot tell, therefore, what they might have indicated as to whether defendant actually had a tattoo. So far as the record shows, his left hand was never exhibited to the jury. Regardless, even if the jury saw the tattoo or believed his mother's tattoo testimony (which they were not bound to believe and could have disbelieved), they could have reasonably found from the evidence that Mrs. Miller did not see the tattoo and that defendant used his right hand and concealed the tattoo to create confusion as to his identity.

■ Even if we were to consider Mrs. Miller's testimony as inconsistent (which we do not), in "overlooking" the tattoo or defendant's being left-handed, it was sufficient for conviction. While the most basic requirement of a trial of an accused is that he be shown to be the person who committed the offense and the courts jealously guard against any chance of error, State v. Parker, Mo., 458 S.W.2d 241, 243 (habeas corpus writ denied Parker v. Swenson, D. C., 332 F.Supp. 1225, denial affirmed 459 F.2d 164, 8 Cir.), possible discrepancies are for the jury. For examples, those as to attire, the precise location and description of facial markings, color of hair, and the weapon are not so self-destructive as to render the evidence insufficient as a matter of law to support the verdict. State v. Spraggins, Mo., 368 S.W.2d 407, 411; State v. Washington, Mo., 383 S.W.2d 518, 522 [3]; State v. Bater, Mo., 232 S.W. 1012, 1013.

■ Positive identification by a single eyewitness, with explanation as to discrepancies, constitutes substantial evidence of the guilt of the defendant and the weight of the evidence is for the jury. This is especially so where the lighting is good and the witness was close to and personally saw the face of the robber. State v. Tucker, Mo., 451 S.W.2d 91, 95; State v. Dupepe, Mo., 241 S.W.2d 4, 7. In a face-to-face robbery, the evidence is indelibly etched in the victim's mind (as it was in Mrs. Miller's) even though the time of confrontation is short. State v. Holt, Mo., 465 S.W.2d 602, 604, 605; State v. Pruett, Mo., 342 S.W.2d 943. Defendant's argument that the clerk's identification was inadequate because primarily based on a description of defendant's face is not well taken. The facial identification along with the other evidence clearly made a case for the state. Robbery convictions have been upheld in cases where the defendant relied (as apparently Cannon does) on an alibi defense where the identification was no more positive or strong than here. State v. Rima, Mo., 395 S.W.2d 102, 104; State v. Hill, Mo., 438 S.W.2d 244, 248; State v. Kaner, 338 Mo. 972, 93 S.W.2d 671, 673; State v. Affronti, 292 Mo. 53, 238 S.W. 106, 111.

■ We will not weigh the evidence where there is substantial evidence to support the finding of the jury and the judg-

ment of the trial court that the verdict is not against the greater weight of the evidence. *Spraggins*, 1. c. 368 S.W.2d 410, 411. The state's evidence was not inherently incredible or self-destructive, or opposed to known physical facts or completely impeached by contradictory evidence, and a denial of relief does not·shock the sense of justice. This being so, the judgment must be affirmed. *Dupepe*, 1. c. 241 S.W.2d 7.

Defendant cites State v. Davis, 337 Mo. 404, 84 S.W.2d 633 (suspicion of guilt not sufficient); State v. Martin, 349 Mo. 639, 162 S.W.2d 847, 851 (requiring substantial evidence); State v. Williamson, 339 Mo. 1038, 99 S.W.2d 76, 81 (nature of burden of proof); Kansas City v. Lane, Mo.App., 391 S.W.2d 955, 959 (each case must stand on its own facts). None of these cases aid defendant.

The judgment is affirmed.

HOLMAN, P. J., and SEILER, J., concur.

BARDGETT, J., not sitting.